## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
================================
                                     :
FIRSTFIRE GLOBAL                     :
    OPPORTUNITIES FUND, LLC,         :
                                     :
         Plaintiff,                  :
                                     :
    v.                               :        Civil Action No. _____
                                     :
WESTPARK CAPITAL, INC.,              :
AEGIS CAPITAL CORPORATION,           :
RICHARD A. RAPPAPORT,                :
JOSEPH T. RALLO, and                 :
DAVID W. BORAL,                      :
                                     :
         Defendants.                 :
                                     :
================================
```

### PLAINTIFF FIRSTFIRE GLOBAL OPPORTUNITIES
### FUND, LLC'S COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1.      The Plaintiff, FirstFire Global Opportunities Fund, LLC (hereinafter "FirstFire" or the "Fund"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendants, WestPark Capital, Inc. (hereinafter "WestPark"), Aegis Capital Corporation (hereinafter "Aegis")(each an "Underwriter," and collectively, with WestPark, hereinafter as the "Underwriters"), and against Richard A. Rappaport (hereinafter "Rappaport"), Joseph T. Rallo (hereinafter "Rallo"), and David W. Boral (hereinafter "Boral," collectively, with Rappaport and Rallo, hereinafter the "Control Persons"), in the above-captioned action. As set forth herein, the Plaintiff's allegations are asserted for its general, compensatory and consequential damages, and for interim, preliminary and permanent injunctive and equitable relief, and arising from, and resulting from, the initial public offering (hereinafter the "Initial Public

Offering," the "Offering" or the "IPO") of the securities of YayYo, Inc. (hereinafter the "Company" or "YAYO"), and the Defendants' violations of the following:

a)      Section 11 of the Securities Act of 1933, *as amended* (hereinafter the "Securities Act" or the "1933 Act"), 15 U.S.C. § 77k;

b)      Section 12(a) of the Securities Act, 15 U.S.C. § 77l(a);

c)      Section 10(b) of the Securities and Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act" or the "1934 Act"), 15 U.S.C. §78j(b), and Rule 10b-5, as promulgated thereunder, 17 C.F.R. § 240.10b-5;

d)      "control person" liability pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a);

e)      breach of contract;

f)      breach of implied covenant of good faith and fair dealing;

g)      fraud and deceit;

h)      negligent misrepresentation;

i)      negligence;

j)      unjust enrichment; and/or

k)      civil conspiracy.

2.      The Plaintiff further alleges that, as a result and as caused by the Defendants' breaches, actions, omissions, policies, practices, and/or courses of conduct, FirstFire has suffered irreparable harm, requiring injunctive relief and specific performance, harm to its business and reputation in the investment industry, damages from the Defendants' unfair and fraudulent acts, practices, and courses of conduct, and causing general, compensatory and consequential damages, lost revenue, lost profits and lost opportunities and prospective business.

3.      The Plaintiff respectfully requests that its causes of action against the Defendants proceed to a trial by jury, that a judgment be entered on all Counts against the Defendants and that FirstFire be awarded its general, compensatory and consequential damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, costs and interest, and grant, order and enter temporary, preliminary and permanent injunctive and equitable relief, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. <u>PARTIES</u>

4.      The Plaintiff, FirstFire Global Opportunities Fund, LLC, is a Delaware limited liability company, with its principal place of business located at 1040 First Avenue, Suite 190, New York, New York 10022. In or about November 2019, the Plaintiff was a subscriber in the Initial Public Offering in the Underwriters' distribution of shares of common stock of YayYo, Inc.

5.      Upon information and belief, the Defendant, WestPark Capital, Inc., is a Colorado corporation, having its principal place of business and principal executive offices located at 1900 Avenue of The Stars, Third Floor, Los Angeles, California 90067. The Defendant is, and was during the relevant period of time, licensed with the U.S. Securities and Exchange Commission (hereinafter the "SEC" or the "Commission") and self-regulatory organizations (hereinafter "SRO's") (CRD No. 39914; SEC No. 8-48898), including but not limited to the Financial Industry Regulatory Authority, Inc. (hereinafter "FINRA"). On or about May 5, 2000, Defendant WestPark was approved by the State of New York to engage in licensed securities transactions and activities, and conducts, and during the relevant time period, did conduct, such securities transactions and activities in New York, New York. Upon information and belief, in or about December 2017, Defendant WestPark consented to regulatory sanctions being entered by FINRA and findings that

it failed, *inter alia*, to establish and maintain a system of supervision reasonably designed to supervise certain aspects of its business. Upon further information and belief, the FINRA Findings stated, *inter alia*, that WestPark did not address certain suitability, risk factors, recommendations or supervision, and therefore provided insufficient guidance and that, the Defendant's system of supervision, *inter alia*, was not reasonably designed to achieve compliance with the applicable securities laws, regulations and rules as to certain aspects of the Defendant's business. In or about the fall of 2019, WestPark was an underwriter in the IPO of YAYO securities and distributed, offered and sold such YAYO securities to the Plaintiff, FirstFire Global Opportunities Fund, LLC.

6.     Upon information and belief, the Defendant, Aegis Capital Corporation, is a New York corporation, having its principal place of business and principal executive offices located at 810 7th Avenue, 18th Floor, New York, New York 10019. The Defendant is, and was during the relevant period of time, licensed with the Commission and the SRO"s (CRD No. 15007; SEC No. 8-13616), including FINRA. On or about May 8, 1984, Defendant Aegis was approved by the State of New York to engage in licensed securities transactions and activities, and conducts, and during the relevant time period, did conduct, such securities transactions and activities in New York, New York. In or about the fall of 2019, Aegis was the lead underwriter in the Offering of YAYO securities and, with Defendant WestPark, distributed, offered and sold the YAYO securities to the investing public, including but not limited to the Plaintiff, FirstFire Global Opportunities Fund, LLC.

7.     Upon information and belief, the Defendant, Richard A. Rappaport, is, and was during the relevant period of time, the Chief Executive Officer of Defendant WestPark Capital, Inc., having his principal place of business and principal executive offices located at 1900 Avenue of The Stars, Third Floor, Los Angeles, California 90067. Upon information and belief, Defendant

Rappaport is, and was during the relevant period of time, a resident in or about Los Angeles, California. During the relevant period of time, Rappaport held certain securities licenses, including but not limited to licenses as a General Securities Principal, Investment Banking Principal and Securities Trader Principal (CRD No. 1885512) and is, and was, a "control person" of WestPark within the scope of the federal securities laws. On or about May 5, 2000, Defendant Rappaport was approved by the State of New York to engage in licensed securities transactions and activities and, upon information and belief, conducts, and during the relevant time period, did conduct, such securities transactions and activities in New York, New York. Upon information and belief, between in or about January 1989 and in or about March 1995, Defendant Rappaport worked in the securities industry for H.J. Meyers, Inc.

8.     Upon information and belief, the Defendant, Joseph T. Rallo, is, and was during the relevant period of time, the Managing Director and Co-Head of Investment Banking of the Defendant, Aegis Capital Corporation, having his principal place of business and principal executive offices located at 810 7th Avenue, 18th Floor, New York, New York 10019. Upon information and belief, Defendant Rallo is, and was during the relevant period of time, a resident in or about New York, New York. During the relevant period of time, Rallo held certain securities licenses, including but not limited to licenses as an Investment Banking Representative (CRD No. 5184862) and is, and was, a "control person" of Aegis within the scope of the federal securities laws. On or about February 26, 2019, Defendant Rallo was approved by the State of New York to engage in licensed securities transactions and activities and, upon information and belief, conducts, and during the relevant time period, did conduct, such securities transactions and activities in New York, New York.

9.     Upon information and belief, the Defendant, David W. Boral, is, and was during the relevant period of time, the Managing Director and Co-Head of Investment Banking of the Defendant, Aegis Capital Corporation, having his principal place of business and principal executive offices located at 810 7th Avenue, 18th Floor, New York, New York 10019. Upon information and belief, Defendant Boral is, and was during the relevant period of time, a resident in or about New York, New York. During the relevant period of time, Boral held certain securities licenses, including but not limited to licenses as a General Securities Principal and an Investment Banking Representative (CRD No. 5340753) and is, and was, a "control person" of Aegis within the scope of the federal securities laws. On or about March 4, 2019, Defendant Boral was approved by the State of New York to engage in licensed securities transactions and activities and, upon information and belief, conducts, and during the relevant time period, did conduct, such securities transactions and activities in New York, New York.

### III. RELATED THIRD-PARTY

10.     On or about June 21, 2016, YayYo, Inc. was incorporated pursuant to the laws of the State of Delaware. According various filings and upon information and belief, the Company rents cars to Uber and Lyft drivers. A certain individual, Ramy El-Batrawi (hereinafter "El-Batrawi"), is, and was, the founder of YayYo and has recently been reappointed as the Chief Executive Officer and Director. On or about March 8, 2018 and upon information and belief, YayYo, Inc. entered into a Securities Purchase Agreement with the Bellridge Capital, L.P. (hereinafter "Bellridge"), an "accredited investor" (as defined in Rule 501(a), as promulgated pursuant to the Securities Act), and pursuant to which Bellridge purchased a senior secured promissory note in the principal face amount of $6,000,000.00. Upon information and belief, such Bellridge promissory note is due on or about March 8, 2023 and provides warrants to acquire up

to an aggregate of 1,500,000 shares of common stock, with an exercise price of $4.00 per share. In or about the fall of 2019, YAYO engaged the Underwriters to conduct and distribute the Initial Public Offering of its securities, in accordance with its final Form S-1/A. *See* YAYO Form S-1/A, dated November 6, 2019, as attached, restated and incorporated by reference herein as **Exhibit A**; *see* Underwriting Agreement between YAYO and Aegis Capital Corporation, dated October 2019, as attached, restated and incorporated by reference herein as **Exhibit B**.

## IV. JURISDICTION AND VENUE

11.     The Plaintiff asserts that this Honorable Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. §78aa(a), as the federal securities law claims asserted herein arise pursuant to Sections 11 and 12 of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. This Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367(a).

12.     The Plaintiff further contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York in that, pursuant to Section 9.6 of the Underwriting Agreement, the Parties agreed that any and all disputes between and/or among them shall be brought, *inter alia*, in the state or federal courts in the state, county and city of New York. *See* Underwriting Agreement (**Exhibit B**), § 9.6. Additionally, this Court is in such District where Defendant Aegis is headquartered and is where, upon information and belief, Defendants Rallo and Boral reside. Moreover, all Defendants are licensed by the State of New York to engage in certain securities transaction and activities. This Court is also the District in which the Plaintiff is headquartered and has its principal place of business, and is where the violative conduct described herein is alleged to have occurred.

13.     This Court has personal jurisdiction, generally and specifically, over the Defendants and by express terms of the Agreement, and as arising from their extensive business contacts and securities transactions and dealings, and generally over time and specifically in their business dealings with the Plaintiff, within the state, county and City of New York.

## V. <u>FACTUAL BACKGROUND</u>

14.     Upon information and belief, in or about 2019, YayYo, Inc., a Delaware corporation, and by and through its founder and CEO, Ramy El-Batrawi, began the process of conducting an initial public offering in order to distribute its securities to the investing public. Thus, in or about October 2019, the Company entered into an Underwriting Agreement with Defendant Aegis, to be the lead underwriter in the Offering, which was to be listed on NASDAQ. *See* Underwriting Agreement (**<u>Exhibit B</u>**).

15.     It is undisputed that Mr. El-Batrawi has a checkered past with allegations of securities violations by the federal securities authorities. Upon information and belief, in and around April 2006, the Commission filed an action against Mr. El-Batrawi for organizing a scheme to manipulate stock prices of his former company, GenesisIntermedia, Inc. (hereinafter "GENI"). According to the Company, the SEC's Complaint alleged, *inter alia*, as follows:

> Mr. El-Batrawi is our founder and he served as our Chief Executive Officer from the incorporation of the Company until October 4, 2018, Acting Chief Executive Officer from November 17, 2018 to February 1, 2019 and as our director from November 2016 until September 2019. Since 2012, Mr. El-Batrawi has been the owner and Chief Executive Officer of Growth Strategy Investments, LLC and, since 2015, Mr. El-Batrawi has been the managing director of X, LLC, both of which are management companies. On April 13, 2006, Ramy Y. El Batrawi was named, along with others officers, directors and/or associates of Genesis Intermedia, Inc., as defendants in a Securities and Exchange Commission enforcement action. In the Securities and Exchange Commission ("SEC") complaint, filed in the United States District Court for the Central District of California, entitled *SEC v. Ramy El-Batrawi, et al., United States District Court for the Central District of California, Case No 2: -06-cv-02247-(MRP_(RZ)* (the "Action"). The Action alleged violations of Section 17(a) of the Securities Act and

Section 10(b) and Rule 10b-5 of the Exchange Act, in connection with a stock loan and manipulation scheme. The Action alleged, among other things, that defendants had violated antifraud provisions of federal securities laws by orchestrating a scheme to manipulate the stock price of Genesis Intermedia, Inc. (GENI), a now-defunct public company that was based in Van Nuys, California (the "Complaint"). On April 1, 2010, Mr. El-Batrawi settled the Action by entering into a final judgment by consent with the SEC, without admitting or denying the allegations contained in the Complaint (the "Settlement"). In connection with the voluntary Settlement of the charges set forth in the Complaint, the U.S. District Court for the Central District of California entered the consent against Mr. El-Batrawi, which, among other things, barred Mr. El-Batrawi from acting as an officer or director of a public company for a period of five years following the date of entry of the final judgment by consent. Any negative press stories about Mr. El-Batrawi may harm the reputation of the Company and damage our business prospects.

YAYO Form S-1/A (**Exhibit A**), at p. 24.[1]

16.    Upon information and belief, in or about 2010, a Final Judgment was entered against Mr. El-Batrawi which, *inter alia*, permanently enjoined him from violating Section 17(a) of the Securities Act and Sections 10(b) and 13(b)(5) of the Exchange Act and Rules 10b-5, 13b2-1, and 13b2-2 promulgated thereunder, and from aiding and abetting violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder. The Judgment also barred Mr. El-Batrawi from acting as an officer or director of a public company for a period of five (5) years, which time period commenced on or about April 1, 2010.

17.    In or around the fall of 2019, by, through and in conjunction with WestPark and Aegis, YAYO and the Underwriters made preparations for the Company's Initial Public Offering. *See generally, id.* (**Exhibit A**). Given his history of securities violations and upon information and belief, NASDAQ refused to permit a listing of the Company's shares unless Mr. El-Batrawi resigned and relinquished all authority and control over YAYO prior to the Effective Date of its Offering.

---

[1] The page citations to the Exhibits, as attached herein, include the cover page in the pagination, and refer to sequential numbering thereafter.

18.     A NASDAQ listing was material to the Offering of YAYO securities and material to the investment decision of the investing public, including but not limited to Plaintiff FirstFire. Indeed, the Underwriters and the Control Persons, by and through the Prospectus, represented to investors, including but not limited to the Plaintiff, as follows:

> [The Company has] applied to have [its] common stock listed on the Nasdaq Capital Market under the symbol "YAYO" which listing is a condition to this offering.

*Id*. (**Exhibit A**), Prospectus, at p. 149.

19.     In order to comply with the NASDAQ requirements, the Underwriters and the Control Persons represented to investors, including but not limited to the Plaintiff, as follows:

> As a condition to approving the Company's common stock for listing on The Nasdaq Capital Market, X, LLC, an entity that is wholly-owned and controlled by Ramy El-Batrawi, our founder and former Chief Executive Officer and former director, agreed to sell 12,525,000 of its 15,425,000 shares of common stock. The 12,525,000 shares (the "Private Shares") were sold pursuant to an exemption from registration under the Securities Act to four existing Company shareholders who qualify as accredited investors (as that term is defined in Securities Act Rule 501(a)). The Private Shares were sold at $3.00 per share in exchange for non-recourse, non-interest-bearing promissory notes with maturities ranging from one year to eighteen months. As a result of the sale, X, LLC's beneficial ownership shall be reduced to 9.9% of the shares outstanding after the completion of this Offering. We will not receive any proceeds from the sale of the Private Shares. If the offering contemplated by this registration statement is not consummated by January 31, 2020, the parties have agreed to unwind the sale of the Private Shares transaction in compliance with applicable law. Mr. El-Batrawi has also entered into a Voting Trust Agreement (the "Trust") pursuant to which the voting power of all of his remaining 2,900,000 shares of common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters.

*Id.* (**Exhibit A**), at p. 13.

20.     As a result of the NASDAQ requirements, the Underwriters and the Control Persons represented to investors, including but not limited to the Plaintiff, in pertinent part, as follows:

On October 4, 2018, Mr. El-Batrawi resigned as Chief Executive Officer. He then was appointed Acting Chief Executive Officer on November 17, 2018. On February 1, 2019, Mr. El-Batrawi resigned from his position as Acting Chief Executive Officer of the Company upon the appointment of Jonathan Rosen as Chief Executive Officer. Mr. El-Batrawi resigned as our director effective as of September 1, 2019.

*Id.* (**Exhibit A**), at p. 80; *see also id.* (**Exhibit A**), at p. 81.

21.     The Underwriters and the Control Persons also represented to investors, including but not limited to the Plaintiff, as follows:

We depend on a small number of executive officers and other members of management to work effectively as a team, to execute our business strategy and operating business segments, and to manage employees and consultants. Our success will be dependent on the personal efforts of our Chief Executive Officer, our directors and such other key personnel. Any of our officers or employees can terminate his or her employment relationship at any time, and the loss of the services of such individuals could have a material adverse effect on our business and prospects. *Mr. El-Batrawi, the founder and original Chairman of the Board and original Chief Executive Officer of the Company from its incorporation of the Company, resigned from all positions with the Company as a condition for being approved for listing on The Nasdaq Capital Market*. Our management team has only worked together for only a very short period of time and may not work well together as a management team.

*Id.* (**Exhibit A**), at p. 21 (emphasis added).

22.     The Underwriters and Control Persons also informed FirstFire and other investors that, in or about February 2019, Jonathan Rosen allegedly "succeeded" and "replaced" Mr. El-Batrawi as the Chief Executive Officer of the Company.

23.     Thus, the Underwriters and the Control Persons represented to investors, including but not limited to FirstFire, as follows:

As of the date of this Prospectus we have no employment agreements or similar arrangements with our executive officers. If we fail to reach mutually satisfactory agreement with our executives, any one or more of such persons may terminate their association with the Company. The loss of any one or more of these experienced executives may have a material and adverse effect on our Company and its business prospects. The Company has entered into an oral agreement with its Chief Executive Officer, Jonathan Rosen, for an annual salary of $300,000,

retroactive to his start date of February 1, 2019. The Company also agreed to issue a restricted stock grant of 500,000 shares of common stock with one-third of the restricted shares vesting upon the closing of the Company's initial public offering with the remainder vesting ratably each month over the twenty-four months following the initial public offering.

*Id.* (**Exhibit A**); *see also id.* (**Exhibit A**), at p. 81.

24.     The Underwriters and the Control Persons also made numerous representations of material fact to investors, including but not limited to FirstFire, regarding the Company's "*Use of Proceeds*," as arising from the Offering. Indeed, the Defendants represented to investors, including FirstFire, as follows:

[The Company] currently intend[s] to use the net proceeds to [YAYO] from this primary offering to purchase vehicles to add to [its] fleet of passenger vehicles made available for rent through our wholly-owned subsidiary, Distinct Cars, and for general corporate purposes, including working capital and sales and marketing activities. See the section of this prospectus titled "*Use of Proceeds*" beginning on page 36.

*Id.* (**Exhibit A**) at p. 13.

25.     Additionally, the Defendants represented to the investors, including FirstFire, that

The principal purposes of this primary offering are to increase [the Company's] capitalization and financial flexibility, increase [its] visibility in the marketplace and create a public market for [its] common stock. As of the date of this prospectus, we cannot specify with certainty all of the particular uses for the net proceeds to us from this primary offering. However, we currently intend to use the net proceeds to us from this primary offering to add to our fleet of passenger vehicles made available for rent through the Company's wholly-owned subsidiary, Distinct Cars, and for general corporate purposes, including working capital, sales and marketing activities. We may also use a portion of the net proceeds for the acquisition of, or investment in, technologies, solutions or businesses that complement our business, although we have no present commitments or agreements to enter into any acquisitions or investments.

*Id.* (**Exhibit A**), at p. 43.

26.     Additionally, Aegis, WestPark and the Control Persons specifically made material representations to the Plaintiff and other investors regarding the use of the millions of dollars which

were to be raised by the Offering, would be (estimated) as follows:

| | | |
|---|---|---|
| - | Purchase of Passenger Vehicles Made Available for Rent | $ 5,000,000 |
| - | Repayment of Notes Payable | $ 2,400,000 |
| - | Sales and Marketing | $   750,000 |
| - | Working Capital and General Corporate Purposes | $   750,000 |

Total   $ 8,900,000

*Id*. (**Exhibit A**).

27.     The Underwriters and the Control Persons delivered the Prospectus with material misrepresentations to investors, including but not limited to the Plaintiff, FirstFire Global Opportunities Fund, LLC, in New York, New York, in connection with the offer, purchase and sale of YAYO securities, and in accordance with their duties and obligations under the Securities Act and the Exchange Act, and FirstFire relied upon the same, to its detriment.

28.     The Underwriters and the Control Persons had a duty to investigate and to know, and should have investigated and known, of material information which reasonable investors would need for their investment decision in connection with the offer, purchase and/or sale of securities, and in accordance with their duties and obligations under the Securities Act and the Exchange Act, and FirstFire relied upon the same, to its detriment.

29.     In detrimental reliance upon the representations of the Underwriters and the Control Persons, by and through the Prospectus, the Form S-1/A and other representations, on or about October 31, 2019, the Plaintiff, FirstFire Global Opportunities Fund, LLC, provided an "indication of interest" (hereinafter the "Indication" or the "Indication of Interest") to Defendant WestPark in connection with the offer, purchase and/or sale of YAYO securities in the Initial Public Offering. *See* FirstFire's Indication of Interest, dated October 31, 2019, as attached, restated and incorporated by reference herein as **Exhibit C**.

30.     Upon information and belief and at or before the Plaintiff's Indication, the

Underwriters and the Control Persons knew, and/or should have known, that, despite the NASDAQ requirements, Mr. El-Batrawi continued, directly and/or indirectly, to exercise supervision, authority and control over YAYO, and was intimately involved, on a day-to-day basis, with the business, operations and finances of the Company.

31.     Upon information and belief and at or before the Plaintiff's Indication, the Underwriters and the Control Persons knew, and/or should have known, that, despite the NASDAQ requirements, Mr. El-Batrawi continued, directly and/or indirectly, to exercise supervision, authority and control over the Initial Public Offering of the Company's securities, and was intimately involved, on a day-to-day basis, with the decision-making as relating to the Offering, on behalf of the Company.

32.     Upon information and belief and at or before the Plaintiff's Indication, the Underwriters and the Control Persons knew, and/or should have known, that their representations in the Prospectus, the Form S-1/A and/or otherwise as to the Company's Use of Proceeds from the Offering was false and fraudulent, and YAYO never intended to use the proceeds of the IPO to purchase vehicles, or in accordance with the estimates or schedules, as set forth in the Prospectus, the Form S-1/A and/or otherwise, and as relied upon by investors, including but not limited to FirstFire, to its detriment.

33.     Upon information and belief, in or about October or November 2019, the Underwriters and the Control Persons were unable, through their own efforts, to raise the Ten Million ($10,000,000.00) Dollars (U.S.) to close the Offering in accordance with the listing requirements of NASDAQ.

34.     Upon information and belief and after difficulties arose with the placement of the Offering in or about October or November 2019, the Underwriters and the Control Persons

requested that certain holders of significant debt in the Company invest additional money in YAYO securities in order to close the Offering.

35.     Upon information and belief and after difficulties arose with the placement of the Offering in or about October or November 2019, Mr. El-Batrawi became materially involved in efforts to close the Offering and/or obtain additional indications of interest for the YAYO securities, assisting and often working daily at the offices of Defendant WestPark in Los Angeles, California, and in violation of the NASDAQ listing requirements.

36.     Upon information and belief and at or before the Plaintiff's Indication, the Underwriters and the Control Persons knew, and/or should have known, that Mr. El-Batrawi's material involvement in efforts to close the Offering and/or obtain additional indications of interest for the YAYO securities, assisting and often working daily at the offices of Defendant WestPark in Los Angeles, California, is, and was, in violation of the NASDAQ's requirements.

37.     Upon information and belief and at or before the Plaintiff's Indication, the Underwriters and the Control Persons knew, and/or should have known, that their representations to investors, including but not limited to the Plaintiff, in the Prospectus, the Form S-1/A and/or otherwise false and fraudulent as to Mr. El-Batrawi's material involvement in efforts to close the Offering and/or obtain additional indications of interest for the YAYO securities, assisting and often working daily at the offices of Defendant WestPark in Los Angeles, California.

38.     Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," Mr. El-Batrawi informed Defendant WestPark that he received an indication of interest for $1.2 Million ($1,200,000.00) Dollars (U.S.) from a certain Trust, with a well-known individual as the beneficial owner of such Trust, and which funds were necessary to close the Offering in accordance with the Prospectus, the Form S-1/A and the

NASDAQ requirements.

39.     Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the Underwriter(s) and/or Control Person(s) receiving such an "indication of interest" of $1.2 Million ($1,200,000.00) Dollars (U.S.) from Mr. El-Batrawi knew, or should have known, that such "indication of interest" by such Trust and/or investor in the YAYO Offering was not *bona fide*.

40.     Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the Underwriter(s) and/or Control Person(s) receiving such an "indication of interest" of $1.2 Million ($1,200,000.00) Dollars (U.S.) from Mr. El-Batrawi knew, or should have known, that such "indication of interest" by such Trust and/or investor in the YAYO Offering was in violation of NASDAQ requirements.

41.     Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the Underwriter(s) and/or Control Person(s) receiving such an "indication of interest" of $1.2 Million ($1,200,000.00) Dollars (U.S.) from Mr. El-Batrawi knew, or should have known, that such "indication of interest" by such Trust and/or investor in the YAYO Offering constituted material misrepresentations in connection with the offer, purchase and/or sale of YAYO securities, as made by the Underwriters and the Control Persons in the Prospectus, the Form S-1/A and/or otherwise to investors, including but not limited to the Plaintiff, to its detriment.

42.     Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," such Trust and investor never provided a *bona fide* indication of interest and never intended to purchase $1.2 Million ($1,200,000.00) Dollars (U.S.) of YAYO's shares in the Initial Public Offering, nor intended to honor his "indication of interest."

43.     Upon information and belief, the Defendant Underwriters never communicated with such beneficial owner of the Trust in order to ascertain as to whether he was a *bona fide* investor providing an "indication of interest" of $1.2 Million ($1,200,000.00) Dollars (U.S.) in the Offering.

44.     Upon information and belief, the Defendant Control Persons never communicated with such beneficial owner of the Trust in order to ascertain as to whether he was a *bona fide* investor providing an "indication of interest" of $1.2 Million ($1,200,000.00) Dollars (U.S.) in the Offering.

45.     Upon information and belief, the Defendant Underwriters never conducted any and/or sufficient due diligence and/or other inquiry or investigation in order to ascertain as to whether such Trust and/or investor was providing a *bona fide* "indication of interest" of $1.2 Million ($1,200,000.00) Dollars (U.S.) in the Offering.

46.     Upon information and belief, the Defendant Control Persons never conducted any and/or sufficient due diligence and/or other inquiry or investigation in order to ascertain as to whether such Trust and/or investor was providing a *bona fide* "indication of interest" of $1.2 Million ($1,200,000.00) Dollars (U.S.) in the Offering.

47.     Upon information and belief, the Underwriters and the Control Persons knew, or should have known, that such beneficial owner of the Trust did not intend to invest $1.2 Million ($1,200,000.00) Dollars (U.S.) in the YAYO Offering.

48.     Upon information and belief and despite the alleged "Indication of Interest" of such Trust, in or about October or November 2019, the Underwriters and the Control Persons continued to have material difficulties in placing the YAYO Offering and, with the Company and Mr. El-Batrawi, solicited major creditors and/or shareholders to invest additional money in YAYO

securities in order to close the Offering.

49.     Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the Underwriters, the Control Persons, Mr. El-Batrawi and/or the Company sought to sweeten the attraction of such further investment to major shareholders by agreeing that, if the existing creditors and/or investors provided further funding to "close" the Offering, the Company would "immediately" pay back such sums to the creditors and/or shareholders from the proceeds of the Offering.

50.     Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the promise by the Underwriters, the Control Persons, Mr. El-Batrawi and/or the Company to repay major creditors and/or shareholders from the Offering was in direct contravention of the Form S-1/A, the Prospectus and other offering materials.

51.     Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the promise by the Underwriters, the Control Persons, Mr. El-Batrawi and/or the Company to repay major shareholders from the Offering caused the Form S-1/A, the Prospectus and other offering materials to materially misrepresent the Offering and fraudulently mislead investors, including but not limited to the Plaintiff, to its detriment.

52.     Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the promise by the Underwriters, the Control Persons, Mr. El-Batrawi and/or the Company to repay major shareholders from the Offering was a material omission, with a duty to disclose the same, to the Form S-1/A, the Prospectus and other offering materials as to the Offering and fraudulently mislead investors, including but not limited to the Plaintiff, to its detriment.

53.     Upon information and belief and in or about the time of the Plaintiff's Indication

and before the Offering was "closed," the promise by the Underwriters, the Control Persons, Mr. El-Batrawi and/or the Company to repay major shareholders from the Offering was in violation of Sections 11 and 12(a) of the Securities Act, 15 U.S.C. §§ 77k & 77l(a), Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5, as promulgated thereunder, 17 C.F.R. § 240.10b-5, and the Form S-1/A, the Prospectus and other offering materials materially misrepresented the Company's Offering and fraudulently mislead investors, including but not limited to the Plaintiff, to its detriment.

54.     On or about November 15, 2019, the YAYO Initial Public Offering was "closed" by the Underwriters, the Control Persons and the Company, allegedly in accordance with the Securities Act and the Company's Form S-1/A, which had been declared effective on or about November 13, 2019.

55.     In or about November 2019 and after the Initial Public Offering was "effective" and "closed" by the Underwriters, the Control Persons and the Company, YayYo, Inc.'s shares were listed on the NASDAQ Capital Market under the symbol "YAYO."

56.     In or about November 2019, the Plaintiff completed its offer and purchase of the YAYO securities, by, through and as distributed and sold by the Underwriters and the Control Persons, in the Company's Initial Public Offering, and, in detrimental reliance upon the material misrepresentations in the Prospectus, the Form S-1/A and otherwise, and in connection with the offer, purchase and sale of YAYO securities by the Defendants.

57.     In or about November 2019, the Underwriters and the Control Persons knew, or should have known, that the Offering was falsely and fraudulently "closed" by and through their material misrepresentations in connection with the offer, purchase and sale of YAYO securities by the Defendants, and in violation of the representations in Form S-1/A, the Prospectus and other

offering materials as delivered to investors, including but not limited to Plaintiff FirstFire, to its detriment.

58.     By the false and fraudulent "closing" of the Company's Initial Public Offering in or about November 2019, the Underwriters and the Control Persons sold a total of approximately 2,625,000 common shares at a price of $4.00 per share, including over $1.0 Million ($1,000,000.00) Dollars (U.S.) to Plaintiff FirstFire.

59.     Upon information and belief, after the "closing" of the Company's Offering and in direct contravention of the representations made by the Underwriters and the Control Persons, by the Prospectus and the Form S-1/A, as relied upon by FirstFire and other investors, YAYO used the Proceeds of the Offering to repay such loans of the Company's creditors, which had made additional investments in the YAYO Offering.

60.     Upon information and belief and after the "closing" of the Company's Offering, the Underwriters and Control Persons knew, or should have known, that the Company never intended to use funds raised from the IPO for the purchase of vehicles or to increase production and revenues, as provided by the Prospectus, the Form S-1/A and/or otherwise to investors, including but not limited to FirstFire, to its detriment.

61.     Moreover, upon information and belief, Defendant WestPark's underwriting fees exceeded the total of the subscription monies that it raised in the Offering. Total gross proceeds from the Offering were $10,500,000, before deducting underwriting discounts and commissions and other offering expenses.

62.     Upon information and belief, after the closing of the Company's Offering, the beneficial owner of the Trust informed the Underwriters and/or the Control Persons that he did not authorize such an "indication of interest" in the YAYO Offering, and refused to pay the $1.2

Million ($1,200,000.00) Dollars (U.S.) supposedly authorized by him. Thus, by the Trust's refusal to honor the $1.2 Million ($1,200,000.00) Dollars (U.S.) "indication of interest" in YAYO securities, the Underwriters failed to close the Offering in accordance with their representations and filings, and in accordance with the Prospectus, the Form S-1 and NASDAQ requirements, to the detriment of investors, including but not limited to FirstFire.

63.    Upon information and belief, Defendants WestPark and/or Aegis, and as authorized by their respective Control Person(s), sold the YAYO securities which had allegedly been the subject of the Trust's $1.2 Million ($1,200,000.00) Dollars (U.S.) "indication of interest" into the open market, and thereby caused a significant decline in the price of the Company's freely tradeable shares of common stock, to the detriment of the Plaintiff.

64.    Upon information and belief, such sale of YAYO securities by one or more of the Underwriters, as authorized by their respective Control Person(s), materially and negatively affected the positions of investors in YAYO securities, including but not limited to FirstFire, to its detriment.

65.    Upon information and belief, such schemes were in direct contravention of the Form S-1 and the Prospectus, and the Underwriters and the Control Persons knew, or should have known, that the Offering, the Prospectus, and the Offering Documents contained untrue statements of material facts, upon which a reasonable investor, including FirstFire, would, and did, rely upon in making its investment decisions.

66.    In or about November 2019 and December 2019 and upon information and belief, the price of the Company's shares exceeded, at certain times, $3.97 / share and millions of shares were traded by investors.

67.    Upon information and belief, NASDAQ thereafter learned that Mr. El-Batrawi

continued to control the Company, directly and/or indirectly, and in direct contravention to the terms, conditions and listing requirements that NASDAQ had imposed upon YAYO during the process of preparing for its Offering.

68.     In or about February 2020 and upon information and belief, NASDAQ informed the Company that it had violated its listing requirements and, as a result, it intended to commence the process by which YAYO would be delisted from its exchange.

69.     The information that Mr. El-Batrawi continued to have authority over, and to control the Company, directly and/or indirectly, was material, and would have been material, to the decision of a reasonable investor, such as FirstFire, making an investment decision as to whether or not to invest in YAYO. The NASDAQ decision to delist the Company is, and was, a devastating loss to the investors with positions in YAYO, including but not limited to the Fund.

70.     Thus, on or about February 10, 2020 and, upon information and belief as a result of the NASDAQ delisting notice, YayYo announced its intention to voluntarily delist its common stock from the NASDAQ capital market, effective February 20, 2020. YAYO published and disseminated certain statements, which provided, in pertinent part, as follows:

> **BEVERLY HILLS, Calif., Feb. 10, 2020 (GLOBE NEWSWIRE) —** YayYo, Inc. (NASDAQ: YAYO) (the "Company" or "YayYo") today announced its intention to voluntarily delist its common stock from the NASDAQ Stock Market ("NASDAQ") effective on February 20, 2020. The Company expects that its common stock will be approved for quotation on the OTCQB from and after that date. The Company has elected to effect the voluntary delisting of its common stock after discussions with NASDAQ's staff and based on the determination of the Company's board of directors that voluntarily delisting the common stock from the NASDAQ is in the best interests of the Company and its stockholders. Nasdaq has advised the Company that it believes that the Company has failed the conditions for continued listing of its common stock set forth in Listing Rule 5250(a). The voluntary delisting will permit the Company to operate its business free from restrictions imposed by NASDAQ rules and the conditions applicable to the listing of the Company's common stock on the NASDAQ. The Company has notified NASDAQ of its intent to voluntarily delist its common stock from the NASDAQ. The Company currently anticipates that it will file with the Securities and Exchange

Commission a Form 25 relating to the delisting of its common stock on or about February 20, 2020 and expects the delisting of its common stock to be effective ten days thereafter. The purpose of the Form 25 filing is to effect the voluntary delisting from the NASDAQ of the Company's outstanding common stock. The Company does not expect the delisting to have any adverse effects on its business operations…

71.     On or about February 10, 2020, the Company filed a Form 8-K, which detailed the NASDAQ delisting of the YAYO securities.  *See* Yayo, Inc.'s Form 8-K, dated February 10, 2020, as attached, restated and incorporated by reference herein as **Exhibit D**.

72.     On or about February 28, 2020, the Board of Directors of YayYo appointed Mr. El-Batrawi again as the Company's Chief Executive Officer and as a member of the Board, thereby openly appointing the individual that had hatched the fraudulent scheme to defraud investors in connection with the Offering, the Offering Documents, including the Prospectus, and in connection with the offer, purchase, and sale of securities to investors, including but not limited to FirstFire.

73.     Since the announcement that YAYO was delisting from NASDAQ, the stock price has plummeted, causing substantial losses to investors, including but not limited to FirstFire, as to sums invested a mere few months previously.

74.     Between in or about February 2020 and April 2020, the price of YAYO shares has ranged from approximately 8¢ / share to 10¢ / share in recent trading activity.

75.     The Defendants Underwriters and Control Persons made misrepresentations of material facts and omissions of material facts with a duty to disclose so as not to be misleading to the Plaintiff, FirstFire Global Opportunities Fund, LLC, by and through the delivery of the Prospectus to the Plaintiff and in connection with the offer, purchase and/or sale of YAYO securities, including but not limited to: a) the material omission of Mr. El-Batrawi's continued authority and control over the Company, in violation of NASDAQ requirements; b) the false and fraudulent "Use of Proceeds," as detailed in the Form S-1/A, the Prospectus and in the Offering

Documents; c) the false and fraudulent "indication of interest" by a well-known individual in connection with a certain Trust; d) the false and fraudulent "closing" of the Offering, in violation of NASDAQ requirements; and e) other misrepresentations and omissions to state material facts, with a duty to disclose the same to the Plaintiff, which material facts a reasonable investor, such as FirstFire, required and used, and/or would have required and used in making its investment decision.

76.     The Defendants Underwriters and Control Persons made misrepresentations of material facts and omissions of material facts with a duty to disclose so as not to be misleading to the Plaintiff, FirstFire Global Opportunities Fund, LLC, by and through the delivery of the Prospectus to the Plaintiff, knew, and/or should have known, and failed to conduct appropriate, necessary and sufficient due diligence, inquiries and/or investigations as to: a) the material omission of Mr. El-Batrawi's continued authority and control over the Company, in violation of NASDAQ requirements; b) the false and fraudulent "Use of Proceeds, as detailed in the Form S-1/A, the Prospectus and in the Offering Documents; c) the false and fraudulent "indication of interest" by a well-known individual in connection with a certain Trust; d) the false and fraudulent "closing" of the Offering, in violation of NASDAQ requirements; and e) other misrepresentations and omissions to state material facts, with a duty to disclose the same to the Plaintiff, which material facts a reasonable investor, such as FirstFire, used and/or would have used in making its investment decision.

77.     The Underwriters and the Control Persons have violated the federal securities laws and have perpetrated a fraud and deceit upon the Plaintiff, FirstFire Global Opportunities Fund, LLC, which suffered the loss of over One Million ($1,000,000.00) Dollars (U.S.) as a consequence. Throughout, the Underwriters and/or the Control Persons have been unjustly enriched, causing the

Plaintiff to suffer further damages and injuries. As a result of the fraudulent scheme, actions, concealment, and omissions of the Underwriters and the Control Persons, the Fund has incurred substantial damages and lost opportunity in such assets.

78.     On or about March 23, 2020, the Plaintiff delivered certain correspondence to the Defendants, and made demand for relief as to its damages, lost profits, losses, and other injuries. *See* Plaintiff's Correspondence, dated March 23, 2020, as attached, restated and incorporated by reference herein as **Exhibit E**.

79.     To date, the Defendants have failed to respond, and/or have rejected the Plaintiff's demand for relief, and have failed to provide any substantive response to FirstFire's assertions, as set forth herein.

80.     On or about April 13, 2020, the Company filed a Form 8-K, as of April 2, 2020, which indicated that the Company had provided a "secured position" on "all assets" of YAYO and its subsidiaries to X, LLC, an entity owned and/or controlled by Mr. El-Batrawi, for a loan of a mere $150,000.00, which debt is due and payable in thirty (30) days thereafter, and demonstrating the virtually complete dissipation of the Proceeds of the Offering by the Company, including but not limited to the Plaintiff's investment of over $1.0 Million ($1,000,000.00) Dollars (U.S.).  *See* Yayo, Inc.'s Form 8-K, dated April 13, 2020, as attached, restated and incorporated by reference herein as **Exhibit F**.

81.     The Company's April 13th Form 8-K stated, in pertinent part, as follows:

> On April 2, 2020, X, LLC, a company wholly-owned and controlled by Ramy El-Batrawi, the Chief Executive Officer and a Director of YayYo, Inc. (the "Company"), loaned $50,000 to the Company, and on April 6, 2020, X, LLC, loaned an additional $100,000 to the Company. These loans were made under an oral agreement, are secured by all of the assets of the Company and its subsidiaries, bear no interest, and are payable 30 days after the date of the loan. The Company will use the proceeds of these loans for general working capital purposes.

*See* Yayo, Inc.'s Form 8-K (**Exhibit F**) at p.2.

82.     Also in the YAYO's April 13th Form 8-K, the Company stated, in pertinent part, as follows:

> On April 3, 2020, the Company issued and sold 1,428,571 of its common stock, par value $0.000001 per share, to a private investor who is an "accredited investor" as defined in Rule 501 under the Securities Act of 1933, as amended (the "Securities Act"), for a purchase price of $0.07 per share, for gross proceeds of $100,000. The Company will use the proceeds of this sale for general working capital purposes.

*See Id.* (**Exhibit F**) at p.2.

83.     Upon information and belief, by providing a first secured position on all of the assets of the Company and its subsidiaries to X, LLC, Mr. El-Batrawi has almost unfettered control and authority over YAYO, for a mere $150,000.00, and all the unsecured creditors and shareholders, including FirstFire and other investors, are at substantial risk for the loss of their entire investment.

84.     Plaintiff FirstFire alleges that the Underwriters and the Control Persons have committed securities fraud, unfair and deceptive trade practices, and have perpetrated a fraud and deceit upon FirstFire, which suffered the loss of over One Million ($1,000,000.00) Dollars (U.S.) as a consequence. Throughout, the Parties have been unjustly enriched and, in effect, misappropriated and converted FirstFire's assets, causing it to suffer further damages and injuries. As a result of the fraudulent scheme, actions, concealment, and omissions of the Underwriters, the Fund has incurred substantial damages and lost opportunity in such assets.

## VI. <u>VIOLATIONS OF LAW</u>

### <u>COUNT I – VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT OF 1933</u>
**(as to All Defendants)**

85.     The Plaintiff reasserts Paragraphs 1 through 84 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

86.     As set forth herein, the Defendants WestPark and Aegis are "underwriters," as defined and provided by the federal securities laws.

87.     As set forth herein, the Defendants Rappaport, Rallo and Boral are "control persons" of "underwriters," as defined and provided by the federal securities laws.

88.     Section 11 of the Securities Act, 15 U.S.C. §77k, provides, in pertinent part, as follows:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security may, either at law or in equity, in any court of competent jurisdiction, sue…"
>
> **(1)** every person who signed the registration statement;
>
> **(2)** every person who was a director of (or person performing similar functions) or partner in, the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;
>
> **(3)** every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;
>
> **(4)** every … or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement, in such registration statement, report, or valuation, which purports to have been prepared or certified by him;
>
> **(5)** every underwriter with respect to such security.

15 U.S.C. §77k.

89.     The Form S-1/A, the Prospectus and the other Offering Documents (hereinafter, collectively the "Registration Documents") as to the Company's Initial Public Offering were materially, false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

90.     The Defendants delivered the Registration Documents to public investors, including but not limited to the Plaintiff, which relied upon such Registration Documents to make its investment of over $1.0 Million ($1,000,000.00) Dollars (U.S.) in the Company's securities, to its detriment.

91.     The Defendants knew, or should have known that the Registration Documents, which was declared effective on or about November 13, 2019, as to the Company's Initial Public Offering were materially false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

92.     The Defendants failed to conduct due diligence, as sufficient, necessary and appropriate, in order to make a reasonable investigation or to possess reasonable grounds to believe that the statements in the Registration Documents were true, were not materially misleading and/or did not omit material information, while having a duty to disclose, which caused the Registration Documents to be materially misleading.

93.     The Defendants made misrepresentations and material omissions to the Plaintiff, which relied upon the same, in contravention of their affirmative obligations under the federal securities laws.

94.     The Defendants distributed the YAYO securities pursuant to the Registration Documents to public investors, including but not limited to the Plaintiff, which relied upon such Registration Documents to make its investment of over $1.0 Million ($1,000,000.00) Dollars (U.S.) in the Company's securities, to its detriment.

95.     The Plaintiff provided its Indication to Defendant WestPark, with Defendant Aegis as the lead underwriter, subscribed to the Company's IPO, and purchased the YAYO securities by and through the Offering, as distributed by the Defendants.

96.     As set forth herein, the Defendants violated Section 11 of the Securities Act, 15 U.S.C. §77k, jointly and severally, in whole and/or in part, and have engaged in activities that give rise to violations of the Securities Act.

97.      As a direct and proximate cause of the Defendants' violations of the Section 11 of the Securities Act, 15 U.S.C. §77k, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT II – VIOLATIONS OF SECTION 12(A)(2) OF THE SECURITIES ACT
### (as to All Defendants)

98.     The Plaintiff reasserts Paragraphs 1 through 97 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

99.     Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), imposes liability on sellers of securities which make untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, and failed to disclose material facts, by means of a "prospectus," as defined by the federal securities laws.

100.    The Registration Documents included a "prospectus," as defined in Section 2(10) of the Securities Act, 15 U.S.C. § 77b(10).

101.    The Registration Documents, including a "prospectus," were delivered by the Defendants, in interstate commerce, to public investors, including but not limited to the Plaintiff.

102.    The Registration Documents, including a "prospectus," were delivered by the Defendants, in interstate commerce, pursuant to the distribution of securities by the Defendants, in the Initial Public Offering of the common stock of YayYo, Inc. to public investors, including but not limited to the Plaintiff.

103.    The Defendants were sellers, offerors, and/or solicitors of subscribers and/or purchasers of the securities offered by YayYo, Inc. in its Initial Public Offering and in accordance with Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(2).

104.    The Defendants delivered, and caused to be delivered, the Registration Documents in order to induce public investors, including but not limited to the Plaintiff and others, to subscribe to and/or to purchase, the securities of YayYo, Inc. in the Offering.

105.    As set forth herein, the Registration Documents were false, fraudulent, inaccurate and/or misleading, contained untrue statements of material facts, omitted to state material facts necessary to make such statements made not misleading, and omitted to state material facts required to be stated therein.

106.    By their actions and omissions, with a duty to disclose, the Defendants participated in the preparation, dissemination, delivery and/or distribution of the materially false and/or misleading Registration Documents.

107.    Defendants failed to make a reasonable, sufficient and diligent inquiry and/or investigation of the statements contained in the Form S-1/A, the Prospectus and/or the other Registration Documents.

108.    The Defendants had a duty to ensure that statements in the Registration Documents were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not materially misleading.

109.    The Plaintiff did not know, nor could it have known, of the untruths and/or omissions contained in the Registration Documents.

110.    The Plaintiff detrimentally relied upon the Registration Documents, including but not limited to the Form S-1/A, the Prospectus and the Offering Documents, as delivered and provided by Defendants.

111.    As a direct and proximate cause of the Defendants' violations of the Section 12(a)(2) of the Securities Act, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

### COUNT III –VIOLATIONS OF SECTION 10(B)
### AND RULE 10B-5 OF THE EXCHANGE ACT
### (as to All Defendants)

112.    The Plaintiff reasserts Paragraphs 1 through 111 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

113.    Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5, as promulgated thereunder, 17 C.F.R. §240.10b-5, provide that, in connection with the offer, purchase and/or sale of securities, it is unlawful to, knowingly, recklessly and intentionally:

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

114.    During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, engaged in one or more common plans, schemes, and unlawful courses of conduct, to operate or perpetrate a fraud or deceit upon the Plaintiff, in connection with the offer, purchase and/or sale of YAYO securities.

115.    During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff in connection with the offer, purchase and/or sale of YAYO securities.

116.    During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, published and disseminated false, deceptive and untrue statements of material facts to the Plaintiff in connection with the offer, purchase and/or sale of YAYO securities.

117.    During the relevant time period and as set forth herein, the Defendants omitted material facts, with a duty to disclose such material facts, which a reasonable investor would require in order to make its investment decision, and in order to mislead the Plaintiff in connection with the offer, purchase and/or sale of YAYO securities.

118.    During the relevant time period and as set forth herein, the Defendants delivered the Prospectus and/or other Registration Documents in connection with the distribution of YAYO

securities in the Initial Public Offering.

119.    During the relevant time period and as set forth herein, the Defendants delivered the Prospectus and/or other Registration Documents to the Plaintiff, upon which it relied, to its detriment.

120.    During the relevant time period and as set forth herein, the Defendants' purpose and effect of the scheme, plan, and unlawful course of conduct was, *inter alia,* to induce Plaintiff and others to purchase securities.

121.    As a direct and proximate cause of the Defendants' violations of the Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

**COUNT IV – "CONTROL PERSON" LIABILITY**
**(as to All Defendants)**

122.    The Plaintiff reasserts Paragraphs 1 through 121 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

123.    During the relevant time period and as set forth herein, the Defendants are, and were during the relevant time, "control persons" within the meaning of Section 15 of the Securities Act, and Section 20(a) of the Exchange Act.

124.    In addition to their direct liability, the Defendants, WestPark, Aegis, Rappaport, Rallo and/or Boral, are liable to the Plaintiff for the conduct of such individual(s), as described herein, in that:

> a)      at all times material hereto, the Defendants controlled certain individual(s), in their employ and/or subject to their authority, supervision and/or control,

respectively, directly or indirectly;

b) at all times material hereto and with respect to all of the transactions and misrepresentations described herein, such individual(s), in their employ and/or subject to their authority, supervision and/or control, respectively, and/or as officers, employees and/or agents of the Defendants;

c) at all times material hereto, the Defendants failed to have policies, practices and/or procedures in effect, which were adequate, sufficient, necessary and/or appropriate in order to monitor and supervise the actions of such individual(s), as described herein, and adequate, sufficient, necessary and/or appropriate to prevent said actions from occurring and continuing to occur; and

d) at all times material hereto, the Defendants, with respect to the Plaintiff's investment in YAYO in the Initial Public Offering, failed to properly or sufficiently implement, execute and/or utilize the policies, practices and/or procedures which they had in effect and which purportedly were intended and designed to monitor and supervise the actions of such individual(s), described herein and to prevent said actions from occurring and continuing to occur.

125. The Defendants, jointly and severally, singly and in concert, directly and/or indirectly, benefitted from fees, profits, gains, interest, commissions and/or other monies, as derived from the conduct of such individual(s), as described herein.

126. As "control persons," the Defendants are liable for the false and fraudulent actions, practices, courses of conduct and/or omissions of those controlled persons committing a fraud and deceit in connection with the offer, purchase and/or sale of YAYO securities, at the time of the wrongs alleged herein and as set forth herein, within the meaning of Section 15 of the Securities

Act and Section 20(a) of the Exchange Act, as the Defendants had the supervision, power, authority, and influence over such controlled persons, and exercised the same as described herein.

127.    The Defendants' control, authority, supervision and/or positions made them privy to and provided them with knowledge, actual and/or apparent, as to the material misrepresentations and the omissions of material facts, with a duty to disclose, as to the Plaintiff.

128.     As a direct and proximate cause of the "control person" liability of the Defendants, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

### COUNT V - BREACH OF CONTRACT
**(as to Defendant WestPark Only)**

129.    The Plaintiff reasserts Paragraphs 1 through 128 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

130.    The Plaintiff entered into a contract with Defendant WestPark, in order to invest in the Company, in good faith and for its investment objectives.

131.    By its contracts with WestPark, the Plaintiff sought to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the securities industry.

132.    A breach of contract is failure without excuse to perform a duty which is due under the contract.

133.    Defendant WestPark, by and through its conduct, entered into a contract to distribute, offer and/or sell YAYO securities, in the Offering, to the Plaintiff.

134.    The contracts between the Plaintiff and Defendant WestPark, required, implicitly and/or expressly, that the Defendant comply with securities industry standards, practices and

courses of conduct, and under the federal and state securities laws and the rules and regulations of the SRO's, including but not limited to NASDAQ and FINRA.

135.    During the relevant time period and as set forth herein, the Plaintiff performed all conditions, covenants and promises required of it, under the contracts with WestPark.

136.    During the relevant time period and as set forth herein, Defendant WestPark failed to perform, and breached, the conditions, covenants and promises required of it, under the contracts with FirstFire.

137.    During the relevant time period and as set forth herein, Defendant WestPark is liable for a breach of contract and for a breach of an implied covenant of good faith and fair dealing.

138.    As a direct and proximate cause of the Defendant's breaches of its contracts, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

### COUNT VI - BREACH OF IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING
#### (as to Defendant WestPark Only)

139.    The Plaintiff reasserts Paragraphs 1 through 138 of the Complaint, together with **Exhibits,** and restates and incorporates them herein by reference.

140.    It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contact shall take any action to harm another party's rights under the contract.

141.    The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement of faithfulness to an agreed upon common purpose and

consistency with the justified expectations of the other party.

142.    A breach of contract is the failure to perform for which a legal excuse is lacking.

143.    As a matter of law, a contract existed and Defendant WestPark breached and failed to comply with the covenant of good faith and fair dealing.

144.    During the relevant time period and as set forth herein, the law is clear - the Plaintiff had binding contracts and the Defendant WestPark has no legal basis, as a matter of law, to avoid its obligations under the contract.

145.    Defendant WestPark had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contracts and statements made to the Plaintiff to induce it to enter into the contract and provide assets to the Defendant in exchange for its promise to repay the same, with interest.

146.    As set forth herein, the Defendant WestPark breached the implied covenant of good faith and fair dealing with the Plaintiff.

147.    As a direct and proximate cause of the Defendant's breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

### COUNT VII - FRAUD AND DECEIT
### (as to Defendants WestPark and Aegis Only)

148.    The Plaintiff reasserts Paragraphs 1 through 147 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

149.    The actions of the Defendants described herein constitute fraud and deceit, including but not limited to the following:

(a) the Defendants made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;

(b) the Defendants made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and

(c) the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

150.    As a direct and proximate cause of the Defendants' fraud and deceit, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT VIII – NEGLIGENT MISREPRESENTATION
### (as to Defendants WestPark and Aegis Only)

151.    The Plaintiff reasserts Paragraphs 1 through 150 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

152.    The Defendants' conduct sets out a claim for negligent misrepresentation in that they negligently provided Plaintiff with erroneous and misleading information, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

153.    As a direct and proximate cause of the Defendants' negligent misrepresentations, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT IX – NEGLIGENCE
### (as to Defendants WestPark and Aegis Only)

154.    The Plaintiff reasserts Paragraphs 1 through 153 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

155.    The Defendants had a duty to verify the facts contained in the Registration Documents and to conduct adequate, sufficient, necessary and/or appropriate due diligence in regard to the contents and the delivery of the Form S-1/A, the Prospectus and the other Registration Documents, as filed with the Commission, to the Plaintiff.

156.    During the relevant time period and as set forth herein, the Defendants breached their duty by delivering the Prospectus and/or the other Registration Documents and were negligent in their actions and omissions, as set forth herein.

157.    As a direct and proximate cause of the Defendants' negligence, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT X – UNJUST ENRICHMENT
### (as to Defendants WestPark and Aegis Only)

158.    The Plaintiff reasserts Paragraphs 1 through 157 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

159.    The Defendants illegally received assets and benefits from the Plaintiff, as arising from their false and fraudulent statements and misrepresentations, and omissions to state material facts, with a duty to disclose the same, and without providing equivalent value therefor.

160.    The Defendants' actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

161.    The Defendants have been unjustly enriched by their actions, as described herein.

162.    As a direct and proximate cause of the Defendants' unjust enrichment, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential

damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

**COUNT XI – CIVIL CONSPIRACY**
**(as to all Defendants)**

163.    The Plaintiff reasserts Paragraphs 1 through 162 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

164.    The Defendants' actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted, in concert and in a civil conspiracy, against the Plaintiff.

165.    The Defendants, together with others, combined, conspired, acted in concert, and/or engaged in a conspiracy by entering into an agreement with unlawful motives and/or means, and undertook overt acts towards the ends of such conspiracy.

166.    In order to attain of the outcome of their conspiracy, the Defendants required coordination and actions to be taken in unison and/or in concert, together with joint tortious activity of the other co-conspirators.

167.    The Defendants had the particular power and/or authority in their business and business relationships to force, coerce, and/or encourage others to participate in this conspiracy and result in the Offering, in the unlawful delivery of the Prospectus, and in the offer, purchase and/or sale of the YAYO securities to the Plaintiff.

168.    The Defendants furthered the conspiracy by lending aid and encouragement to the others and ratifying and adopting the acts of its co-conspirators.

169.    As a direct and proximate cause of the Defendants' civil conspiracy, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## VII. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, FirstFire Global Opportunities Fund, LLC, respectfully requests that this Honorable Court grant it the following relief:

A)       Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B)       Determine that the Defendants are liable for all damages, losses, and costs, as alleged herein;

C)       Determine and award the Plaintiff, FirstFire Global Opportunities Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendants, as set forth herein;

D)       Render a judgment and decision on behalf of the Plaintiff, FirstFire Global Opportunities Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendants are liable, in all respects;

E)       Order, decide, adjudge, and determine that the liability of the Defendants, is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)       Award the Plaintiff, FirstFire Global Opportunities Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

G)      Award the Plaintiff,  FirstFire Global Opportunities Fund, LLC, its actual attorneys'

fees, for being required to prosecute this action;

H)      Award the Plaintiff, FirstFire Global Opportunities Fund, LLC, multiple, double,

treble, and/or punitive damages in an amount to be determined;

I)      Enter judgment on behalf of the Plaintiff, FirstFire Global Opportunities Fund,

LLC, on the Complaint;

J)      Order declaratory relief, as appropriate and as this Honorable Court deems

necessary; and/or

K)      Any additional relief which this Honorable Court deems just and proper.


**THE PLAINTIFF, FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC,
DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE**


                                    Respectfully Submitted,
                                    PLAINTIFF, FirstFire Global Opportunities
                                        Fund, LLC,

                                    By its Attorneys,


                                     */s/ Philip M. Giordano            .*
                                    Philip M. Giordano, Esq.
                                    Sophia E. Kyziridis, Esq. (*pro hac vice* to be filed)
                                    Giordano & Company, P.C.
                                    REED & GIORDANO, P.A.
                                    47 Winter Street, Suite 800
                                    Boston, Massachusetts 02108-4774
                                    Telephone: (617) 723-7755
                                    Facsimile: (617) 723-7756
                                    Email: pgiordano@reedgiordano.com
                                    Email: skyziridis@reedgiordano.com

Dated: April 28, 2020