# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
==============================
                                  :
FIRSTFIRE GLOBAL                  :
    OPPORTUNITIES FUND, LLC,      :
                                  :
        Plaintiff,               :
                                  :
    v.                            :        Civil Action No. 1:20-cv-03327-LLS
                                  :
WESTPARK CAPITAL, INC.,           :
AEGIS CAPITAL CORPORATION,        :
RICHARD A. RAPPAPORT,             :
ROBERT J. EIDE,                   :
RIDESHARE RENTAL, INC. f/k/a,     :
  YAYYO, INC., and                :
RAMY EL-BATRAWI,                  :
                                  :
        Defendants.              :
                                  :
==============================
```

## PLAINTIFF FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC'S
## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1.      The Plaintiff, FirstFire Global Opportunities Fund, LLC (hereinafter "FirstFire" or the "Fund"), respectfully submits its Second Amended Complaint and Demand for Jury Trial (hereinafter the "Second Amended Complaint") against the Defendants, WestPark Capital, Inc. (hereinafter "WestPark"), Aegis Capital Corporation (hereinafter "Aegis")(each of Westpark and Aegis an "Underwriter," and collectively hereinafter the "Underwriters"), and against Richard A. Rappaport (hereinafter "Rappaport"), and Robert J. Eide (hereinafter "Eide," collectively, with Rappaport, hereinafter the "Underwriter Control Persons" and with the Underwriters, hereinafter the "Underwriter Defendants"), and against Rideshare Rental, Inc. f/k/a YayYo, Inc. (hereinafter "YAYO" or the "Company") and Ramy El-Batrawi (hereinafter "El-Batrawi"), YAYO's founder

1

and Chief Executive Officer (hereinafter "CEO") in the above-captioned action. As set forth herein, the Plaintiff's allegations are asserted for its general, compensatory and consequential damages, and for interim, preliminary and permanent injunctive and equitable relief, arising from, and resulting from, the initial public offering (hereinafter the "Initial Public Offering," the "Offering" or the "IPO") of the securities of the Company, and the Defendants' violations of the following:

A)   **<u>Violations of Securities Act of 1933 and Negligence-Based Counts</u>**

 a)  Section 11 of the Securities Act of 1933, *as amended* (hereinafter the "Securities Act" or the "1933 Act"), 15 U.S.C. § 77k;

 b)  Section 12(a) of the Securities Act, 15 U.S.C. § 77l(a);

 c)  "control person" liability pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o;

 d)  negligent misrepresentation; and/or

 e)  negligence;

and/or

B)   **<u>Violations of Securities Exchange Act of 1934, Fraud and Other Counts</u>**

 f)  Section 10(b) of the Securities and Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act" or the "1934 Act"), 15 U.S.C. §78j(b), and Rule 10b-5, as promulgated thereunder, 17 C.F.R. § 240.10b-5;

 g)  "control person" liability pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a);

 h)  fraud and deceit;

 i)  breach of contract;

j)   breach of implied covenant of good faith and fair dealing;

k)   unjust enrichment; and/or

l)   civil conspiracy.

2.      The Plaintiff further alleges that, as a result of and as caused by the Defendants' breaches, actions, omissions, policies, practices, and/or courses of conduct, FirstFire has suffered irreparable harm, requiring equitable relief and rescission, harm to its business and reputation in the investment industry, damages from the Defendants' acts and omissions, practices, and courses of conduct made by or chargeable to Defendants, and causing general, compensatory and consequential damages, lost revenue, lost profits, and lost opportunities and prospective business.

3.      As set forth in this Second Amended Complaint, Plaintiff initially asserts, (in Counts I through V), a series of strict liability and negligence claims based on the Securities Act and related common law claims; these claims are asserted against the Defendants who are statutorily responsible for the material misrepresentations contained in the prospectus and registration statement pursuant to which YAYO issued securities to Plaintiff. Plaintiff specifically disclaims any allegations of fraud in these non-fraud claims. In the second set of claims (in Counts VI though XII), Plaintiff asserts a number of fraud-based claims under the Exchange Act and common law against those Defendants who directly participated in the fraudulent scheme and those who knew about or who were reckless in failing to know about or discover the fraud.

4.      The Plaintiff respectfully requests that its causes of action against the Defendants proceed to a trial by jury, that a judgment be entered on all Counts against the Defendants and that FirstFire be awarded its general, compensatory and consequential damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, costs and interest, and the Court grant, order and enter temporary, preliminary and permanent injunctive and equitable relief,

including rescission, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. **PARTIES**

5.     The Plaintiff, FirstFire Global Opportunities Fund, LLC, is a Delaware limited liability company, with its principal place of business located at 1040 First Avenue, Suite 190, New York, New York 10022. In or about November 2019, the Plaintiff was a subscriber in the Initial Public Offering in the Underwriters' distribution of shares of common stock of the Company, then known as "YayYo, Inc."

6.     Upon information and belief, the Defendant, WestPark Capital, Inc., is a Colorado corporation, having its principal place of business and principal executive offices located at 1900 Avenue of The Stars, Third Floor, Los Angeles, California 90067. The Defendant is, and was during the relevant period of time, licensed with the SEC and self-regulatory organizations (hereinafter "SROs") (CRD No. 39914; SEC No. 8-48898), including but not limited to the Financial Industry Regulatory Authority, Inc. (hereinafter "FINRA"). On or about May 5, 2000, Defendant WestPark was approved by the State of New York to engage in licensed securities transactions and activities, and conducts, and during the relevant time period, did conduct, such securities transactions and activities in New York, New York. Upon information and belief, in or about December 2017, Defendant WestPark consented to regulatory sanctions being entered by FINRA and findings that it failed, *inter alia*, to establish and maintain a system of supervision reasonably designed to supervise certain aspects of its business. Upon further information and belief, the FINRA Findings stated, *inter alia*, that WestPark did not address certain suitability, risk factors, recommendations or supervision, and therefore provided insufficient guidance and that, the Defendant's system of supervision, *inter alia*, was not reasonably designed to achieve

compliance with the applicable securities laws, regulations and rules as to certain aspects of the Defendant's business. In or about the fall of 2019, WestPark was an underwriter in the IPO of YAYO securities and distributed, offered and sold such YAYO securities to the Plaintiff, FirstFire Global Opportunities Fund, LLC.

7.      Upon information and belief, the Defendant, Aegis Capital Corporation, is a New York corporation, having its principal place of business and principal executive offices located at 810 7th Avenue, 18th Floor, New York, New York 10019. The Defendant is, and was during the relevant period of time, licensed with the Commission and the SROs (CRD No. 15007; SEC No. 8-13616), including FINRA. On or about May 8, 1984, Defendant Aegis was approved by the State of New York to engage in licensed securities transactions and activities, and conducts, and during the relevant time period, did conduct, such securities transactions and activities in New York, New York. In or about the fall of 2019, Aegis was the lead underwriter in the Offering of YAYO securities and, with Defendant WestPark, distributed, offered and sold the YAYO securities to the investing public, including but not limited to the Plaintiff, FirstFire Global Opportunities Fund, LLC.

8.      Upon information and belief, the Defendant, Richard A. Rappaport, is, and was during the relevant period of time, the founder, Chairman, and Chief Executive Officer of Defendant WestPark Capital, Inc., having his principal place of business and principal executive offices located at 1900 Avenue of The Stars, Third Floor, Los Angeles, California 90067. Upon information and belief, Defendant Rappaport is, and was during the relevant period of time, a resident in or about Los Angeles, California. During the relevant period of time, Rappaport held certain securities licenses, including but not limited to licenses as a General Securities Principal, Investment Banking Principal and Securities Trader Principal (CRD No. 1885512).      As

WestPark's CEO, Rappaport is, and was, a "control person" of WestPark within the scope of the federal securities laws. On or about May 5, 2000, Defendant Rappaport was approved by the State of New York to engage in licensed securities transactions and activities and, upon information and belief, conducts, and during the relevant time period, did conduct, such securities transactions and activities in New York, New York. Upon information and belief, between in or about January 1989 and in or about March 1995, Defendant Rappaport worked in the securities industry for H.J. Meyers, Inc.

9.     Upon information and belief, the Defendant, Robert J. Eide, is, and was during the relevant period of time, a founder and the Chief Executive Officer and President of Defendant Aegis Capital Corporation, having his principal place of business and principal executive offices located at 810 7th Avenue, 18th Floor, New York, New York 10019.  Upon information and belief, Defendant Eide is, and was during the relevant period of time, the 100% owner of Aegis Capital Holding Corporation, which is the 100% owner of Aegis Capital Corporation. Upon information and belief, Defendant Eide is, and was during the relevant period of time, a resident in or about New York, New York. During the relevant period of time, Eide held certain securities licenses, including but not limited to licenses as a General Securities Principal and Operations Professional (CRD No. 1015261).  As Aegis's CEO and the sole owner of the entity that solely owns Aegis, Defendant Eide is, and was during the relevant period of time, a "control person" of Aegis within the scope of the federal securities laws. On or about April 30, 1987, Defendant Eide was approved by the State of New York to engage in licensed securities transactions and activities and, upon information and belief, conducts, and during the relevant time period, did conduct, such securities transactions and activities in New York, New York. Defendant Eide is, and was during the relevant

period of time, an attorney licensed to practice law (Registration No. 1616416) by the State of New York.

10.     The Defendant, Rideshare Rental, Inc. is a Delaware corporation with a principal place of business and principal executive offices at 433 N. Camden Drive, Suite 600, Beverly Hills, California, 90210.  On November 10, 2020, the Company announced that it had changed its name from "YayYo, Inc." to "Rideshare Rental, Inc."  In the Prospectus it filed with the U.S. Securities and Exchange Commission (hereinafter the "SEC" or the "Commission") in connection with the initial public offering ("IPO") that is the subject of this action, the Company represented that it is a holding company operating through its wholly-owned subsidiaries, including Distinct Cars, LLC, a Delaware limited liability company ("Distinct Cars"), Savvy LLC, a Delaware limited liability company ("Savvy"), Rideyayyo LLC, a Delaware limited liability company ("Rideyayyo") and Rideshare Car Rentals LLC, a Delaware limited liability company ("Rideshare").  *See* YAYO Form S-1/A, dated November 6, 2019, as attached, restated and incorporated by reference herein as **Exhibit A**, at p. 9.[1]  The Company further represented in its Prospectus that

> As of the date of this Prospectus, the Company's operating business segments include (i) an online peer-to-peer bookings platform to service the ridesharing economy through the Company's wholly-owned subsidiary Rideshare (the "Rideshare Platform"), and (ii) the maintenance of a fleet of standard passenger vehicles to be made commercially available for rent through the Company's wholly-owned subsidiary Distinct Cars ("Fleet Management"). Through the Company's wholly-owned subsidiaries Rideshare and Distinct Cars, the Company seeks to become the leading provider of a standard rental vehicles to drivers in the ridesharing economy.

*Id.*

11.     Defendant Ramy El-Batrawi (hereinafter "El-Batrawi"), is, and was, the founder of YAYO.  El-Batrawi was reappointed as YAYO's Chief Executive Officer and Director in February

---

[1] The page citations to the Exhibits, as attached herein, include the cover page in the pagination, and refer to sequential numbering thereafter.

2020.  In its Prospectus for the IPO, the Company provided the following background information

for El-Batrawi:

> Mr. El-Batrawi is our founder and he served as our Chief Executive Officer from
> the incorporation of the Company until October 4, 2018, Acting Chief Executive
> Officer from November 17, 2018 to February 1, 2019 and as our director from
> November 2016 until September 2019. Since 2012, Mr. El-Batrawi has been the
> owner and Chief Executive Officer of Growth Strategy Investments, LLC and,
> since 2015, Mr. El-Batrawi has been the managing director of X, LLC, both of
> which are management companies.

*Id.* at p. 24.

### III. <u>JURISDICTION AND VENUE</u>

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section

22 of the Securities Act, 15 U.S.C. §77v, Section 27 of the Exchange Act, 15 U.S.C. §78aa, and

28 U.S.C. §§ 1331 and 1337 because this is a civil action arising under the laws of the United

States. This Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. §

1367(a).

13.     The Plaintiff further contends that, pursuant to 28 U.S.C. § 1391(b) and (c), venue

is proper in the Southern District of New York in that, pursuant to Section 9.6 of the Underwriting

Agreement, the Parties agreed that any and all disputes between and/or among them shall be

brought, *inter alia*, in the state or federal courts in the state, county and city of New York. *See*

Form of Underwriting Agreement between YAYO and Aegis Capital Corporation, dated October

2019, as attached, restated and incorporated by reference herein as **<u>Exhibit B</u>**, § 9.6 (hereinafter

the "Underwriting Agreement"). Additionally, this Court is in such District where Defendant

Aegis is headquartered and is where, upon information and belief, Defendant Eide resides.

Moreover, all Underwriter Defendants are licensed by the State of New York to engage in certain

securities transaction and activities. This Court is also the District in which the Plaintiff is

headquartered and has its principal place of business, and is where the violative conduct described herein is alleged to have occurred.

14.     This Court has jurisdiction over the non-fraud claims which arise under Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k; 77l(a)(2), and 77o, and supplemental jurisdiction over all related state common law claims pursuant to 28 U.S.C. § 1367(a). Additionally, this Court has jurisdiction over the securities fraud claims which arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), and supplemental jurisdiction over all related state common law claims pursuant to 28 U.S.C. § 1367(a).

15.     This Court has personal jurisdiction, generally and specifically, over the Defendants and by express terms of the Agreement, and as arising from their extensive business contacts and securities transactions and dealings, and generally over time and specifically in their business dealings with the Plaintiff, within the state, county and City of New York.

## IV.     FACTUAL ALLEGATIONS PERTINENT TO CLAIMS UNDER THE SECURITIES ACT AND NEGLIGENCE-BASED CLAIMS

### A.     YAYO Begins Preparations for Its IPO

16.     Based on its public filings, in or about April 2018, the Company, then known as YayYo, Inc., by and through its founder and then-CEO, Ramy El-Batrawi, began the process of conducting an initial public offering to distribute its equity securities to the investing public.  On April 30, 2018, the Company filed with the SEC a registration statement on Form S-1, which in combination with subsequent amendments on Forms S-1/A and filed pursuant to Rule 424(b)(4), are collectively referred to as the "Registration Statement."  *See* YAYO Form S-1/A (**Exhibit A**).

17.     In or about the fall of 2019, YAYO engaged the Underwriters to conduct and

distribute the Initial Public Offering of its securities, in accordance with and pursuant to the disclosures contained in the Registration Statement.  Thus, in or about October 2019, the Company entered into an Underwriting Agreement with Defendant Aegis, to be the lead underwriter in the Offering, which was to be listed on NASDAQ. *See* Underwriting Agreement (**Exhibit B**).  The form of Underwriting Agreement also identified WestPark as an underwriter of the Offering.  *See* **Exhibit B**, at p. 36.

18.     On November 14, 2019, the Company filed with the SEC on Form 424B4 the final prospectus, dated November 12, 2019, for the IPO of common stock (the "Prospectus").  *See* YAYO Prospectus, dated November 12, 2019, as attached, restated and incorporated by reference herein as **Exhibit C.**  YAYO and the Underwriters incorporated the Prospectus into the Registration Statement.  *See* **Exhibit A**, at p. 6, *et seq.*  The Prospectus forms part of the Registration Statement.

19.     In the IPO, YAYO asserted that it intended to sell 2,625,000 shares at $4.00 per share; thus, purportedly the total gross proceeds from the offering would be $10,500,000.  *See* Prospectus (**Exhibit C**), at p. 2.

20.     It is undisputed that Mr. El-Batrawi has a checkered past, with allegations of securities violations by the federal securities authorities. In its Prospectus for the IPO, the Company disclosed that Mr. El-Batrawi entered into a settlement agreement with the SEC to resolve a complaint alleging he participated in orchestrating a scheme to manipulate stock prices of his former company, GenesisIntermedia, Inc. (hereinafter "GENI"). The Company described the SEC action against Mr. El-Batrawi as follows:

On April 13, 2006, Ramy Y. El Batrawi was named, along with others officers, directors and/or associates of Genesis Intermedia, Inc., as defendants in a Securities and Exchange Commission enforcement action. In the Securities and Exchange Commission ("SEC") complaint, filed in the United States District Court for the Central District of California, entitled *SEC v. Ramy El-Batrawi, et al., United States District Court for the Central District of California, Case No 2: -06-cv-02247-(MRP_(RZ)* (the "Action"). [sic] The Action alleged violations of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act, in connection with a stock loan and manipulation scheme. The Action alleged, among other things, that defendants had violated antifraud provisions of federal securities laws by orchestrating a scheme to manipulate the stock price of Genesis Intermedia, Inc. (GENI), a now-defunct public company that was based in Van Nuys, California (the "Complaint").

On April 1, 2010, Mr. El-Batrawi settled the Action by entering into a final judgment by consent with the SEC, without admitting or denying the allegations contained in the Complaint (the "Settlement"). In connection with the voluntary Settlement of the charges set forth in the Complaint, the U.S. District Court for the Central District of California entered the consent against Mr. El-Batrawi, which, among other things, barred Mr. El-Batrawi from acting as an officer or director of a public company for a period of five years following the date of entry of the final judgment by consent. Any negative press stories about Mr. El-Batrawi may harm the reputation of the Company and damage our business prospects.

YAYO Prospectus (**Exhibit C**), at p. 26.

21.     Thus, upon information and belief, in or about April 2010, a Final Judgment was entered against Mr. El-Batrawi which, in addition to barring him from acting as an officer or director of a public company for five years also, *inter alia*, permanently enjoined him from violating Section 17(a) of the Securities Act and Sections 10(b) and 13(b)(5) of the Exchange Act and Rules 10b-5, 13b2-1, and 13b2-2 promulgated thereunder, and from aiding and abetting violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder.

### B.     NASDAQ Demands El-Batrawi Stand Aside as a Condition of Listing

22.     As YAYO moved forward with its preparations for the Company's IPO, NASDAQ expressed concerns about a potential listing for YAYO's shares given the extent of Mr. El-

Batrawi's involvement the Company and his prior conduct. Given his history of securities violations and upon information and belief, NASDAQ refused to permit a listing of the Company's shares unless Mr. El-Batrawi resigned and relinquished all authority and control over YAYO prior to the Effective Date of its Offering.  YAYO Prospectus (**Exhibit C**), at pp. 23, 84, 109.

23.    A NASDAQ listing was material to the Offering of YAYO securities and material to the investment decision of the investing public, including but not limited to Plaintiff FirstFire. Indeed, the Underwriters and the Control Persons, by and through the draft Prospectus, represented to investors, including but not limited to the Plaintiff, as follows:

> [The Company has] applied to have [its] common stock listed on the Nasdaq Capital Market under the symbol "YAYO" which listing is a condition to this offering.

YAYO Form S-1/A (**Exhibit A**), Draft Prospectus, at p. 6.

24.    In order to comply with the NASDAQ requirements, the Company and the Underwriters represented to investors, including but not limited to the Plaintiff, that Mr. El-Batrawi would sell a substantial portion of the YAYO shares he owned and held through a related entity, "X, LLC."  More specifically, the Company and the Underwriters disclosed in the final Prospectus as follows:

> As a condition to approving the Company's common stock for listing on The Nasdaq Capital Market, X, LLC, an entity that is wholly-owned and controlled by Ramy El-Batrawi, our founder and former Chief Executive Officer and former director, agreed to sell 12,525,000 of its 15,425,000 shares of common stock. The 12,525,000 shares (the "Private Shares") were sold pursuant to an exemption from registration under the Securities Act to four existing Company shareholders who qualify as accredited investors (as that term is defined in Securities Act Rule 501(a)). The Private Shares were sold at $3.00 per share in exchange for non-recourse, non-interest-bearing promissory notes with maturities ranging from one year to eighteen months. As a result of the sale, X, LLC's beneficial ownership shall be reduced to 9.9% of the shares outstanding after the completion of this Offering. We will not receive any proceeds from the sale of the Private Shares. If the offering contemplated by this registration statement is not consummated by January 31, 2020, the parties have agreed to unwind the sale of the Private Shares transaction in compliance with applicable law.

YAYO Prospectus (**Exhibit C**), at pp. 12-13.

25.     Pursuant to this announced sale by Mr. El-Batrawi, the Company and the Underwriters further represented in the Registration Statement that, on most Company matters subject to a shareholder vote, Mr. El-Batrawi's remaining YAYO shares would not be voted based on his interest but rather in proportion to how other YAYO shares were voted, stating specifically as follows:

> Mr. El-Batrawi has also entered into a Voting Trust Agreement (the "Trust") pursuant to which the voting power of all of his remaining 2,900,000 shares of common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters.

YAYO Prospectus (**Exhibit C**), at p. 13.

26.     The Company and the Underwriters also represented in the Registration that NASDAQ had a voice in whether the voting trust applicable to Mr. El-Batrawi's shares might be unwound, stating specifically as follows:

> Mr. El-Batrawi's entrance into the Voting Trust Agreement is a condition for the Company's approval for listing on The Nasdaq Capital Market.
>
> The Trust shall be irrevocable, and shall terminate upon the earlier of (a) the written agreement of the Company, the trustee and a duly authorized representative of Nasdaq, or (b) the date upon which the Company is not listed on a security exchange controlled by Nasdaq.

*Id.* (**Exhibit C**), at p. 84.

27.     As a result of the NASDAQ requirements, the Company and the Underwriters also represented to investors, including but not limited to the Plaintiff, that Mr. El-Batrawi would cease his involvement in the management of the Company.  More specifically, the Company and the Underwriters disclosed in the final Prospectus in pertinent part, as follows:

On October 4, 2018, Mr. El-Batrawi resigned as Chief Executive Officer. He then was appointed Acting Chief Executive Officer on November 17, 2018. ***On February 1, 2019, Mr. El-Batrawi resigned from his position as Acting Chief Executive Officer of the Company*** upon the appointment of Jonathan Rosen as Chief Executive Officer. ***Mr. El-Batrawi resigned as our director effective as of September 1, 2019.***

*Id.* (**Exhibit C**), at p. 91 (emphasis added); *see also id.* (**Exhibit C**), at p. 92.

28.     The Company and the Underwriters represented in the Registration Statement and

Prospectus that Jonathan Rosen, Mr. El-Batrawi's successor as CEO, was operating independently,

stating as follows:

We depend on a small number of executive officers and other members of management to work effectively as a team, to execute our business strategy and operating business segments, and to manage employees and consultants. ***Our success will be dependent on the personal efforts of our Chief Executive Officer, our directors and such other key personnel.*** Any of our officers or employees can terminate his or her employment relationship at any time, and the loss of the services of such individuals could have a material adverse effect on our business and prospects.

*Id.* (**Exhibit C**), at p. 23 (emphasis added).

29.     The Company and the Underwriters further represented in the Registration

Statement that Mr. Rosen's efforts were critical to the Company's success, stating as follows:

As of the date of this Prospectus we have no employment agreements or similar arrangements with our executive officers. If we fail to reach mutually satisfactory agreement with our executives, any one or more of such persons may terminate their association with the Company. ***The loss of any one or more of these experienced executives may have a material and adverse effect on our Company and its business prospects.*** The Company has entered into an oral agreement with its Chief Executive Officer, Jonathan Rosen, for an annual salary of $300,000, retroactive to his start date of February 1, 2019. The Company also agreed to issue a restricted stock grant of 500,000 shares of common stock with one-third of the restricted shares vesting upon the closing of the Company's initial public offering with the remainder vesting ratably each month over the twenty-four months following the initial public offering.

*Id.* (**Exhibit C**), at p. 23 (emphasis added).

30.     The Company and the Underwriters further represented in the Registration

Statement that Mr. El-Batrawi would not have any role in the management or operation of the Company, stating specifically as follows:

> ***Mr. El-Batrawi***, the founder and original Chairman of the Board and original Chief Executive Officer of the Company from its incorporation of the Company, ***resigned from all positions with the Company as a condition for being approved for listing on The Nasdaq Capital Market***. Our management team has only worked together for only a very short period of time and may not work well together as a management team.

*Id.* (**Exhibit C**), at p. 23 (emphasis added).

### C.   FirstFire Invests in the Offering

31.    The Company and the Underwriter Defendants delivered the Prospectus to investors, including but not limited to the Plaintiff, FirstFire Global Opportunities Fund, LLC, in New York, New York, in connection with the offer, purchase and sale of YAYO securities, and in accordance with their duties and obligations under the Securities Act.

32.    The Underwriters and the Control Persons had a duty to investigate and to know, and should have investigated and known, of material information which reasonable investors would need for their investment decision in connection with the offer, purchase and/or sale of securities, and in accordance with their duties and obligations under the Securities Act and the Exchange Act, and FirstFire relied upon the same, to its detriment.

33.    In detrimental reliance upon the representations of the Company, the Underwriters and the Underwriter Control Persons, by and through the Prospectus, the Form S-1/A and other representations, on or about October 31, 2019, the Plaintiff, FirstFire Global Opportunities Fund, LLC, provided an "indication of interest" (hereinafter the "Indication" or the "Indication of Interest") to Defendant WestPark in connection with the offer, purchase and/or sale of YAYO securities in the Initial Public Offering.

### D.      **YAYO Announces the IPO as "Closed"**

34.      On or about November 15, 2019, YAYO announced that it has "closed" the Initial Public Offering.  *See* Form 8-K, as attached, restated and incorporated by reference herein as **Exhibit D**, at p. 6.   By this public announcement, the Company communicated to investors, including the Plaintiff, that there had been sufficient public appetite to invest in the Company that the Company had been able to sell all 2,625,000 shares as intended.

35.      In or about November 2019 and after the Initial Public Offering was "effective" and "closed" by the Company and the Underwriter Defendants, the Company's shares were listed on the NASDAQ Capital Market under the symbol "YAYO."

36.      In or about November 2019, the Plaintiff completed its offer and purchase of the YAYO securities, by, through and as distributed and sold by the Company, the Underwriters and the Underwriter Control Persons, in the Company's Initial Public Offering, and, in detrimental reliance upon the material misrepresentations in the Prospectus, the Form S-1/A and otherwise, and in connection with the offer, purchase and sale of YAYO securities by the Defendants.

### E.      **El-Batrawi's Continued Involvement with YAYO**

37.      Upon information and belief and at or before the Plaintiff's Indication and continuing thereafter, despite the NASDAQ requirements, Mr. El-Batrawi continued, directly and/or indirectly, to exercise supervision, authority and control over YAYO, and was intimately involved, on a day-to-day basis, with the business, operations and finances of the Company. Further, upon information and belief, despite the NASDAQ requirements, Mr. El-Batrawi failed and/or refused to sell his shares of YAYO stock held through X, LLC, notwithstanding the representations of the same in the Prospectus.

38.      In an action filed in January 2020 against Mr. El-Batrawi in California state court

(the "California Action"), the Company has admitted that Mr. El-Batrawi continued to exercise ownership, influence, and control of YAYO notwithstanding the representations that he had stepped aside.  *See* Complaint for Declaratory Judgment and Permanent Injunction, as attached, restated and incorporated by reference herein as **Exhibit E**, and Declaration of Jonathan Rosen in Support of Plaintiff YayYo, Inc.'s Motion for a Preliminary Injunction and Application for a Temporary Restraining Order as attached, restated and incorporated by reference herein as **Exhibit F** (the "Rosen Declaration"), each as filed by the Company in the California Action.

39.     Specifically, the Company alleged and admitted in the California Action that Mr. El-Batrawi "refused to abide by" his separation from YAYO and instead "continues to operate and hold himself out as if a director or officer of YayYo, or as an otherwise authorized representative of same."  The Company also alleged and admitted that "El-Batrawi has failed and/or refused to sell his shares of stock in the Company."  Rosen Declaration (**Exhibit F**), at p. 4.

40.     Further, the Company alleged and admitted in the California Action the following specific conduct:

a.     Mr. El-Batrawi "has made contact with YayYo competitors, representing himself as the Company, and negotiated terms of purchase of YayYo with said competitors on at least two occasions."

b.     Mr. El-Batrawi "has purported to negotiate these purchases through, upon information and belief, meeting face-to-face with prospective financiers."

c.     Mr. El-Batrawi "has purported to hire a public relations company on behalf of the Company and had same unilaterally produce unauthorized press releases on behalf of the Company, later unsuccessfully attempting to induce YayYo's internal public relations team to publish same."

d.     Mr. El-Batrawi "purported to produce and broadcast a television ad on behalf of YaYo."

e.     Mr. El-Batrawi "purchased air time on Fox Business Channel and aired the commercials as if they came from the Company."

f.      Mr. El-Batrawi "has purported to direct YayYo staff in their roles and job duties without authorization."

g.      Mr. El-Batrawi "has called numerous vendors and suppliers of YayYo without authorization."

h.      Mr. El-Batrawi "has engaged in discussions with vendors and suppliers of YayYo as if he were a representative of the Company."

i.      Mr. El-Batrawi "has, without authorization, recruited executives to work for the Company."

j.      Mr. El-Batrawi "has called multiple investment firms, purporting to represent the Company, in order to set up meetings with them to promote the acquisition of new financing for the Company."

k.      Mr. El-Batrawi "has purchased presentation time at an investment show and made a presentation, purportedly on behalf of the Company without authorization."

l.      Mr. El-Batrawi "has repeated (sic) called multiple employees in an attempt to garner information about the day-today operations of the Company and to redirect their work."

m.      "YayYo adapted its Company Code of Conduct in response to and directly to prohibit Defendant's behavior."

n.      Mr. El-Batrawi "has called the Company's web developer, based in India, and directed same to make changes to the Company website, www.yayyo.com."

o.      Mr. El-Batrawi's "proposed changes to the Company website were in fact made and Company was compelled to immediately remove and remediate the breach of the Company's website and its contract with the web developer."

Rosen Declaration (**Exhibit F**), at pp. 4-6.

41.      Upon information and belief, prior to filing the California Action on January 24, 2020, neither the Company nor the Underwriters disclosed to investors, in the Prospectus or otherwise, that Mr. El-Batrawi "continue[d] to operate and hold himself out as if a director or officer of YayYo, or as an otherwise authorized representative of same" or that Mr. El-Batrawi "ha[d] failed and/or refused to sell his shares of stock in the Company" as admitted in the Rosen Declaration. *See* Rosen Declaration (**Exhibit F**), at p. 4.

42.     Mr. El-Batrawi's failure and/or refusal to sell the YAYO shares and his continuing to operate and hold himself out as if a director, officer, or otherwise authorized representative of YAYO were inconsistent with the requirements set forth by NASDAQ for a YAYO listing.  Given the potential impact on the NASDAQ's agreement to a listing, this information clearly constituted material facts that should have been disclosed in the Prospectus and the Registration Statement. The omission of disclosure about Mr. El-Batrawi's failure to sell YAYO shares and his continued involvement in the Company's operations rendered the Prospectus and Registration Statement materially misleading, given the other representations about the steps allegedly taken by YAYO and Mr. El-Batrawi to satisfy the NASDAQ's listing requirement and given that a NASDAQ Capital Market listing was material to investors, including the Plaintiff.

**F.     NASDAQ Threatens to Delist YAYO Shares**

43.     Upon information and belief, at some point after YAYO announced that the initial public offering had closed, NASDAQ learned that Mr. El-Batrawi had failed to sell his YAYO common shares and/or continued to control or participate in the operations of the Company, directly and/or indirectly, and in direct contravention of the terms, conditions and listing requirements that NASDAQ had imposed upon YAYO during the process of preparing for its Offering.

44.     In or about January or February 2020 and upon information and belief, NASDAQ informed the Company that it had violated NASDAQ's listing requirements and, as a result, NASDAQ intended to commence the process by which YAYO would be delisted from its exchange.

45.     The information that Mr. El-Batrawi continued to have authority over, and to control the Company, directly and/or indirectly, was material, and would have been material, to

the decision of a reasonable investor, such as FirstFire, making an investment decision as to whether or not to invest in YAYO. The NASDAQ decision to move to delist the Company is, and was, a devastating loss to investors with positions in YAYO, including but not limited to the Fund.

46.     Thus, on or about February 10, 2020 and, upon information and belief as a result of the NASDAQ delisting notice, YAYO announced its intention to voluntarily delist its common stock from the NASDAQ capital market, effective February 20, 2020. YAYO published and disseminated certain statements, which provided, in pertinent part, as follows:

> **BEVERLY HILLS, Calif., Feb. 10, 2020 (GLOBE NEWSWIRE) —** YayYo, Inc. (NASDAQ: YAYO) (the "Company" or "YayYo") today announced its intention to voluntarily delist its common stock from the NASDAQ Stock Market ("NASDAQ") effective on February 20, 2020. The Company expects that its common stock will be approved for quotation on the OTCQB from and after that date. The Company has elected to effect the voluntary delisting of its common stock after discussions with NASDAQ's staff and based on the determination of the Company's board of directors that voluntarily delisting the common stock from the NASDAQ is in the best interests of the Company and its stockholders. Nasdaq has advised the Company that it believes that the Company has failed the conditions for continued listing of its common stock set forth in Listing Rule 5250(a). The voluntary delisting will permit the Company to operate its business free from restrictions imposed by NASDAQ rules and the conditions applicable to the listing of the Company's common stock on the NASDAQ. The Company has notified NASDAQ of its intent to voluntarily delist its common stock from the NASDAQ. The Company currently anticipates that it will file with the Securities and Exchange Commission a Form 25 relating to the delisting of its common stock on or about February 20, 2020 and expects the delisting of its common stock to be effective ten days thereafter. The purpose of the Form 25 filing is to effect the voluntary delisting from the NASDAQ of the Company's outstanding common stock. The Company does not expect the delisting to have any adverse effects on its business operations….

47.     On or about February 10, 2020, the Company filed a Form 8-K, which detailed the NASDAQ delisting of the YAYO securities.  *See* Yayo, Inc.'s Form 8-K, dated February 10, 2020, as attached, restated and incorporated by reference herein as **Exhibit G**.

48.     On or about February 28, 2020, the Board of Directors of YAYO appointed Mr. El-Batrawi again as the Company's Chief Executive Officer and as a member of the Board, in open

defiance of the criteria by which YAYO could have maintained a NASDAQ listing.

49.     Since the announcement that YAYO was delisting from NASDAQ, the stock price has plummeted, causing substantial losses to investors, including but not limited to FirstFire, as to sums invested a mere few months previously.

50.     Between in or about February 2020 and June 2020, the price of YAYO shares has declined to as low as approximately 6.9¢ / share, while experiencing significant volume and price volatility during its recent trading activity.

51.     As a result of Defendants' violations of the Securities Act, 15 U.S.C. §77k, and their negligent acts, practices, omissions and courses of conduct, the Plaintiff suffered the loss of virtually its entire YAYO investment in the Initial Public Offering, together with lost profits and lost opportunities arising therefrom, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Company, WestPark, and Aegis (hereinafter the "Entity Defendants").

## V. <u>CAUSES OF ACTION</u>

**A.**    **PLAINTIFF'S CLAIMS FOR RELIEF ARISING UNDER**
**THE SECURITIES ACT AND RELATED STATE LAW CLAIMS**

## <u>COUNT I – VIOLATION OF SECTION 11 OF THE SECURITIES ACT OF 1933</u>
**(as to YAYO and the Underwriters)**

52.    The Plaintiff reasserts Paragraphs 1 through 51 of the Second Amended Complaint, together with **<u>Exhibits</u>**, and restates and incorporates them herein by reference. Solely for the purposes of this Count, the Plaintiff asserts only strict liability and negligence as the basis for the Defendants' violations of law, and expressly disclaims any claim of fraud or intentional misconduct.

53.    As set forth herein, the Defendant YAYO was the issuer and the Defendants WestPark and Aegis were underwriters, as defined and provided by the federal securities laws, of the YAYO initial public offering.

54.    Section 11 of the Securities Act, 15 U.S.C. §77k, provides, in pertinent part, as follows:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security may, either at law or in equity, in any court of competent jurisdiction, sue…"

> (1)    every person who signed the registration statement;

> (2)    every person who was a director of (or person performing similar functions) or partner in, the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

> (3)    every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

> (4)    every … or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having

prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement, in such registration statement, report, or valuation, which purports to have been prepared or certified by him;

(5)     every underwriter with respect to such security.

15 U.S.C. §77k.

55.     The Plaintiff alleges that the Prospectus was incorporated as part of the Registration Statement in the Form S-1/A filed with the SEC.

56.     As alleged herein, the Company and the Underwriters sold or offered to sell YAYO common shares by means of the Registration Statement which contained untrue statements of material fact, including, but not limited to, that X, LLC, an entity that was wholly-owned and controlled by Mr. El-Batrawi, had agreed to sell 12,525,000 shares of YAYO common stock and that Mr. El-Batrawi had "resigned from all positions with the Company," each as a condition to obtaining approval for the Company's common stock to be listed on the NASDAQ Capital Market.

57.     In addition, as alleged in detail herein, the Registration Statement omitted to state material facts necessary to make the statements, in light of the circumstances in which they were made, not misleading, including that Mr. El-Batrawi had failed and/or refused to sell his shares of stock in the Company and that Mr. El-Batrawi continued to operate and hold himself out as if a director or officer of YAYO or as an otherwise authorized representative of YAYO.   The facts misstated and omitted would have been material to a reasonable person reviewing the Registration Statement.

58.     YAYO was the issuer of the common stock pursuant to the Registration Statement and is strictly liable for the untrue statements of material fact and omissions to state material facts therein.

59.     The Entity Defendants sold shares of YAYO in the November 2019 IPO and were responsible for the contents and dissemination of the Prospectus.  Each Entity Defendant owed the Plaintiff a duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that they did not include untrue statements of material fact or omit to state material facts necessary to make the statements, in light of the circumstances in which they were made, not misleading.

60.     As alleged in detail herein, the Company and the Underwriters did not make a reasonable and diligent investigation and did not possess reasonable grounds for believing that the Registration Statement did not contain an untrue statement of material facts or omit to state a material fact necessary to make the statements, in light of the circumstance in which they were made, not misleading.

61.     As asserted herein, the Company and the Underwriters delivered the Registration Statement, and distributed YAYO common shares, to public investors, including but not limited to the Plaintiff, which relied upon such Registration Statement to make its investment of over One Million Dollars (U.S.) ($1,000,000.00) in the Company's securities, to its detriment. Plaintiff purchased the Company's securities without knowledge of the true facts concerning the untrue statements and the omitted material facts alleged herein with respect to the Registration Statement.

62.     As set forth herein, the Plaintiff alleges that the Entity Defendants violated Section 11 of the Securities Act, 15 U.S.C. §77k, jointly and severally, in whole and/or in part, and have engaged in activities that give rise to violations of the Securities Act.

63.     This action is brought within one (1) year after discovery of the untrue statements and omissions in the Registration Statement and Prospectus, and within three (3) years of the effective date of the Registration Statement and Prospectus.

64. As relief hereof, the Plaintiff hereby tenders its YAYO common shares to Defendants and seeks rescission of its purchase to the extent it still owns and/or has any rights or beneficial interests in such YAYO shares.

65. As a direct and proximate cause of the Entity Defendants' violations of Section 11 of the Securities Act, 15 U.S.C. §77k, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Entity Defendants.

## COUNT II – VIOLATIONS OF SECTION 12(A)(2) OF THE SECURITIES ACT
### (as to YAYO and the Underwriters)

66. The Plaintiff reasserts Paragraphs 1 through 65 of the Second Amended Complaint, together with **Exhibits**, and restates and incorporates them herein by reference. Solely for the purposes of this Count, the Plaintiff asserts only strict liability and negligence as the basis for the Defendants' violations of law, and expressly disclaims any claim of fraud or intentional misconduct.

67. Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), imposes liability on sellers of securities which make untrue statements of material facts, omit to state other facts necessary to make the statements not misleading, and fail to disclose material facts, by means of an oral communication or a "prospectus," as defined by the federal securities laws.

68. The Plaintiff asserts that the Prospectus that was incorporated into the Registration Statement constituted a "prospectus," as defined in Section 2(10) of the Securities Act, 15 U.S.C. § 77b(10).

69. As alleged, the Registration Statement, including the Prospectus, (together with the other Offering Documents collectively the "Registration Documents") was delivered by the

Company and the Underwriters, in interstate commerce, to public investors, including but not limited to the Plaintiff, pursuant to the sale and distribution of securities by the Entity Defendants, in the Initial Public Offering of the common stock of the Company.

70.     The Company and the Underwriters sold shares of YAYO stock and were responsible for the contents and dissemination of the Prospectus.

71.     The Plaintiff asserts that the Entity Defendants were sellers, offerors, and/or solicitors of subscribers and/or purchasers of the securities offered by the Company in its Initial Public Offering and in accordance with Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(2).

72.     The Entity Defendants, acting through their employees, agents, and others, solicited such purchases for their personal financial gain through the preparation and dissemination of the Prospectus and oral statements that included untrue statements of material fact and/or omitted to state other facts necessary to make the statements not misleading.

73.     The Entity Defendants delivered, and caused to be delivered, the Registration Documents in order to induce public investors, including but not limited to the Plaintiff and others, to subscribe to and/or to purchase, the securities of the Company in the Offering.

74.     As set forth herein, the Registration Documents were false, inaccurate and/or misleading, contained untrue statements of material facts, omitted to state material facts necessary to make such statements made not misleading, and omitted to state material facts required to be stated therein.

75.     The Entity Defendants had a duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and oral statements to ensure that they did not include untrue statements of material fact or omit to state a material fact required to be

stated in order to make the statements, in light of the circumstances in which they were made, not misleading.

76.     As alleged in detail herein, the Entity Defendants failed to make a reasonable, sufficient and diligent inquiry and/or investigation of the statements contained in the Form S-1/A, the Prospectus and/or the other Registration Documents and oral statements and did not possess reasonable grounds for believing that the statements in the Prospectus and oral statements did not include untrue statements of material facts or omit to state material facts necessary to make the statements, in light of the circumstance in which they were made, not misleading.

77.     The Plaintiff did not know, nor could it have known, of the untruths and/or omissions contained in the Registration Documents and oral statements.

78.     The Plaintiff detrimentally relied upon the Registration Documents, including but not limited to the Registration Statement and the Prospectus, as delivered and provided by Entity Defendants.

79.     This action is brought within one (1) year after discovery of the untrue statements and omissions in the Registration Statement and Prospectus, and within three (3) years of the effective date of the Registration Statement and Prospectus.

80.     The Plaintiff hereby tenders its YAYO common shares to Entity Defendants and seeks rescission of its purchase to the extent it still owns the shares.

81.     As a direct and proximate cause of the Entity Defendants' violations of Section 12(a)(2) of the Securities Act, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Entity Defendants.

## COUNT III – "CONTROL PERSON" LIABILITY FOR
## VIOLATIONS OF SECTIONS 11 AND 12(A)(2) OF THE SECURITIES ACT
### (as to Defendants El-Batrawi, Rappaport, and Eide)

82.     The Plaintiff reasserts Paragraphs 1 through 81 of the Second Amended Complaint, together with **Exhibits**, and restates and incorporates them herein by reference. Solely for the purposes of this Count, the Plaintiff asserts only strict liability and negligence as the basis for the Defendants' violations of law, and expressly disclaims any claim of fraud or intentional misconduct.

83.     The Defendants El-Batrawi, Rappaport, and Eide are, and were during the relevant time, "control persons" of YAYO, WestPark, and Aegis, respectively, within the meaning of Section 15 of the Securities Act.

84.     As alleged in detail herein, YAYO, WestPark, and Aegis violated Sections 11 and 12(a)(2) of the Securities Act by soliciting purchases of YAYO common stock in the IPO from public investors, including the Plaintiff by means of the Prospectus, which included untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.  The Entity Defendants failed to exercise reasonable care regarding the accuracy and completeness of the Registration Statement and the Prospectus.  The facts misstated or omitted would have been material to a reasonable person reviewing the Registration Statement and Prospectus.

85.     Defendants El-Batrawi, Rappaport, and Eide had a duty to disseminate accurate and truthful information with respect to YAYO and its management and operations.

A.     Defendant El-Batrawi

86.     As alleged herein, Mr. El-Batrawi at all relevant times either (i) participated in the operation and management of the Company, and/or (ii) conducted and participated, directly and

indirectly, in the conduct of YAYO's business affairs, and/or (iii) exerted controlling influence over the Company through the extent of his ownership of YAYO and the nature of his relationships with YAYO's employees and directors, including but not limited to the following.

87.      Upon information and belief, the Defendant El-Batrawi had control of YAYO by virtue of his prior executive position with the Company, his continued status as YAYO's largest shareholder (after his failure to sell YAYO shares as agreed), and, as admitted by the Company in its California Action, his continued direct involvement in YAYO's day-to-day operations, including by continuing to operate and hold himself out as if a director or officer of YAYO, or as an otherwise authorized representative of same.

88.      The Plaintiff asserts that the facts demonstrating El-Batrawi's control of YAYO include that Mr. El-Batrawi,

    (a)  "has made contact with YayYo competitors, representing himself as the Company, and negotiated terms of purchase of YayYo with said competitors on at least two occasions;"

    (b)  "has purported to negotiate these purchases through, upon information and belief, meeting face-to-face with prospective financiers;"

    (c)  "has purported to produce and broadcast a television ad on behalf of YayYo;"

    (d)  "purchased air time on Fox Business Channel and aired the commercials as if they came from the Company;"

    (e)  "has purported to direct YayYo staff in their roles and job duties;"

    (f)  has called numerous vendors and suppliers of YayYo;"

    (g)  "has engaged in discussions with vendors and suppliers of YayYo as if he were a representative of the Company;"

    (h)  "recruited executives to work for the Company; "

    (i)  "has called multiple investment firms, purporting to represent the Company, in order to set up meetings with them to promote the acquisition of new financing for the Company;"

(j)  "has purchased presentation time at an investment show and made a presentation, purportedly on behalf of the Company without authorization;"

(k)  has repeatedly "called multiple [YAYO] employees in an attempt to garner information about the day-today operations of the Company and to redirect their work;" and

(l)  "has called the Company's web developer, based in India, and directed same to make changes to the Company website, www.yayyo.com." which "proposed changes to the Company website were in fact made."

Rosen Declaration (**Exhibit F**) at pp. 4-6.

89.    Because of his position of control and authority over YAYO, Mr. El-Batrawi was able to, and did, control, directly or indirectly, the contents of the IPO Prospectus.

90.    As the Company's allegations and admissions in the California Action make clear, Mr. El-Batrawi never ceased to exercise influence and control over YAYO, notwithstanding the representations in the Prospectus and Registration Statement.  And indeed, as alleged in detail herein, the Company restored Mr. El-Batrawi to the formal position of Chief Executive Officer on or about February 28, 2020 and, upon information and belief, ceased to actively prosecute the allegations in the California Action that his continued involvement in YAYO's affairs was improper.  Further, upon information and belief, Mr. El-Batrawi influenced or caused the YAYO Board to make the decision to delist YAYO's common shares from the NASDAQ Capital Market, to the detriment of other YAYO investors, including the Plaintiff.

B.    Defendant Rappaport

91.    As alleged herein, Defendant Rappaport at all relevant times either (i) participated in the operation and management of WestPark, and/or (ii) conducted and participated, directly or indirectly, in the conduct of WestPark's business affairs generally, and the YAYO initial public offering specifically, and/or (iii) exerted controlling influence over Westpark through his

ownership of WestPark and the nature of his relationships with WestPark's officers and employees. Because of his position of control and authority over WestPark, an underwriter of the YAYO IPO, Mr. Rappaport was able to, and did, control the contents of the IPO Prospectus.

92.     Upon information and belief based on disclosures on WestPark's website, Mr. Rappaport founded WestPark Capital in 1999.  He is, and was during the relevant time, the Chairman and Chief Executive Officer of WestPark.  Upon information and belief based on Form ADV filings, WestPark has fewer than 25 employees.  Based on the size of the organization, Rappaport's position as Chairman and CEO, and his status as founder, Rappaport had substantial authority over the day-to-day management and operation of WestPark.  Upon information and belief, Mr. Rappaport also is, and was during the relevant time, one of the principal owners of WestPark, also providing him with substantial authority over the day-to-day management and operation of WestPark.

C.     Defendant Eide

93.     As alleged herein, upon information and belief, the Defendant, Robert J. Eide, is, and was during the relevant period of time, a founder and the Chief Executive Officer and President of Defendant Aegis Capital Corporation, and during the relevant period of time, the 100% owner of Aegis Capital Holding Corporation, which is the 100% owner of Aegis Capital Corporation. Based on Mr. Eide's role as President and CEO of Aegis and his status as the sole owner of the entity that owns all of Aegis, Mr. Eide had substantial authority over the day-to-day management and operation of Aegis.

94.     As alleged above, Defendant Eide at all relevant times either (i) participated in the operation and management of Aegis, and/or (ii) conducted and participated, directly or indirectly, in the conduct of Aegis's business affairs generally, and the YAYO initial public offering

specifically, and/or (iii) exerted controlling influence over Aegis through his controlling ownership of Aegis and/or the nature of his relationships with Aegis's officers and employees. Because of his position of control and authority over Aegis, an underwriter of the YAYO IPO, Mr. Eide was able to, and did, control the contents of the IPO Prospectus.

95.     The Plaintiff purchased YAYO common stock securities issued in the November 2019 Initial Public Offering and was damaged thereby. The November 2019 IPO was conducted pursuant to the Registration Statement and Prospectus.

96.     Defendants El-Batrawi, Rappaport, and Eide acted negligently and without reasonable care regarding the accuracy of the information contained in the YAYO Registration Statement and Prospectus and lacked reasonable grounds to believe that such information was accurate and complete in all material respects.

97.     The Plaintiff did not know and, in the exercise of reasonable diligence could not have known, of the inaccurate statements and omissions in the Registration Statement and Prospectus.

98.     The Plaintiff has sustained damages as a result of the inaccurate statements and omissions in the Registration Statement and Prospectus, for which it is entitled to compensation.

99.     This claim is brought within one year after the discovery of the untrue statements and omissions, and within three years of the November 2019 IPO.

100.    Pursuant to Section 15 of the Securities Act, Defendants El-Batrawi, Rappaport, and Eide are jointly and severally liable with and to the same extent as the Entity Defendants for those entities' violations of Sections 11 and 12(a)(2) of the Securities Act.

101.    As a direct and proximate cause of the Defendants' violations of Sections 11 and 12(a)(2) of the Securities Act, the Plaintiff has suffered, and continues to suffer, irreparable harm,

and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Entity Defendants.

## COUNT IV – NEGLIGENT MISREPRESENTATION
### (as to Defendants YAYO, WestPark and Aegis)

102.    The Plaintiff reasserts Paragraphs 1 through 101 of the Second Amended Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

103.    The Entity Defendants' conduct sets out a claim for negligent misrepresentation in that they negligently provided Plaintiff with erroneous and misleading information, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

104.    As a direct and proximate cause of the Entity Defendants' negligent misrepresentations and omissions, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Entity Defendants.

## COUNT V – NEGLIGENCE
### (as to Defendants YAYO, WestPark and Aegis)

105.    The Plaintiff reasserts Paragraphs 1 through 104 of the Second Amended Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

106.    The Entity Defendants had a duty to verify the facts contained in the Registration Documents and to conduct adequate, sufficient, necessary and/or appropriate due diligence in regard to the contents and the delivery of the Form S-1/A, the Prospectus and the other Registration Documents, as filed with the Commission, to the Plaintiff.

107.    During the relevant time period and as set forth herein, the Entity Defendants

breached their duty by delivering the Prospectus and/or the other Registration Documents and were negligent in their actions and omissions, as set forth herein.

108.    As a direct and proximate cause of the Entity Defendants' negligence, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Entity Defendants.

### B.    PLAINTIFF'S CLAIMS FOR RELIEF ARISING UNDER THE EXCHANGE ACT, FRAUD AND RELATED STATE LAW CLAIMS

### COUNT VI –VIOLATIONS OF SECTION 10(B) AND RULE 10B-5 OF THE EXCHANGE ACT
#### (as to All Defendants)

109.    The Plaintiff reasserts Paragraphs 1 through 108 of the Second Amended Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

110.    Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5, as promulgated thereunder, 17 C.F.R. §240.10b-5, provide that, in connection with the offer, purchase and/or sale of securities, it is unlawful to, knowingly, recklessly and intentionally:

    (a) to employ any device, scheme, or artifice to defraud,

    (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

111.    During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, engaged in one or more common plans, schemes, and unlawful courses of conduct, to operate or perpetrate a fraud or deceit upon the

Plaintiff, in connection with the offer, purchase and/or sale of YAYO securities.

112.     During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon Plaintiff in connection with the offer, purchase and/or sale of YAYO securities.

### A.     **Allegations of Fraudulent Acts, Misrepresentations and Omissions**

113.     The allegations that follow describe the acts, practices, and a course of conduct engaged in by various Defendants that operated as a fraud on the Plaintiff and the investing public. As described in more detail below, the Defendants participated in a fraudulent scheme designed to conceal that there had not been sufficient investor interest to complete the IPO as represented and the Company had made commitments that would prevent it from using the IPO proceeds as represented.

### 1)     **Representations Concerning Use of IPO Proceeds**

114.     The Company and the Underwriters made numerous representations of material fact in the Prospectus and Registration to investors, including but not limited to FirstFire, regarding the Company's "*Use of Proceeds*," as arising from the Offering. Indeed, the Defendants represented in the Registration Statement as follows:

> [The Company] currently intend[s] to use the net proceeds to [YAYO] from this primary offering to purchase vehicles to add to [its] fleet of passenger vehicles made available for rent through our wholly-owned subsidiary, Distinct Cars, and for general corporate purposes, including working capital and sales and marketing activities. See the section of this prospectus titled "*Use of Proceeds*" beginning on page 36.

*Id.* (**Exhibit C**) at p. 12.

115.     Additionally, the Defendants represented in the Registration Statement that

The principal purposes of this primary offering are to increase [the Company's] capitalization and financial flexibility, increase [its] visibility in the marketplace and create a public market for [its] common stock. As of the date of this prospectus, we cannot specify with certainty all of the particular uses for the net proceeds to us from this primary offering. However, we currently intend to use the net proceeds to us from this primary offering to add to our fleet of passenger vehicles made available for rent through the Company's wholly-owned subsidiary, Distinct Cars, and for general corporate purposes, including working capital, sales and marketing activities. We may also use a portion of the net proceeds for the acquisition of, or investment in, technologies, solutions or businesses that complement our business, although we have no present commitments or agreements to enter into any acquisitions or investments.

*Id.* (**Exhibit C**), at p. 50.

116. Additionally, YAYO and the Underwriters specifically made material representations in the Registration Statement regarding estimates of how the Company expected to use the millions of dollars which were to be raised by the Offering, as follows:

| | | |
|---|---|---|
| - | Purchase of Passenger Vehicles Made Available for Rent | $ 5,000,000 |
| - | Repayment of Notes Payable | $ 2,400,000 |
| - | Sales and Marketing | $ 700,000 |
| - | Working Capital and General Corporate Purposes | $ 693,800 |
| | Total | $ 8,793,000 |

*Id.* (**Exhibit C**), at p. 51.

### 2)   Difficulties in Closing the Offering and El-Batrawi's Further Involvement

117. Upon information and belief, in or about October or November 2019, the Entity Defendants, El-Batrawi, Rappaport and Eide were unable, through their own efforts, to raise the Ten Million - Five Hundred Thousand and 00/100 ($10,500,000.00) Dollars (U.S.) to close the Offering in accordance with the listing requirements of NASDAQ.

118. Upon information and belief and after difficulties arose with the placement of the Offering in or about October or November 2019, the Entity Defendants, El-Batrawi, Rappaport and Eide requested that certain holders of significant debt in the Company invest additional money

in YAYO securities in order to close the Offering.

119.    In addition to the admissions of the Company in the California Action as to Mr. El-Batrawi's failure to sell his YAYO shares and his continued involvement in YAYO's operations, upon information and belief and after difficulties arose with the placement of the Offering in or about October or November 2019, Mr. El-Batrawi became materially involved in efforts to close the Offering and/or obtain additional indications of interest for the YAYO securities, assisting and often working daily at the offices of Defendant WestPark in Los Angeles, California, and in violation of the NASDAQ listing requirements.

120.    Upon information and belief and at or before the Plaintiff's Indication, the Entity Defendants, El-Batrawi, Rappaport and Eide knew, and/or should have known, that Mr. El-Batrawi's material involvement in efforts to close the Offering and/or obtain additional indications of interest for the YAYO securities were in violation of the NASDAQ's listing requirements.

121.    Upon information and belief and at or before the Plaintiff's Indication, the Entity Defendants, El-Batrawi, Rappaport and Eide knew, and/or should have known, that their representations to investors, including but not limited to the Plaintiff, in the Prospectus, the Registration Statement and/or otherwise were false and misleading as to Mr. El-Batrawi's material involvement in efforts to close the Offering and/or obtain additional indications of interest for the YAYO securities.

### 3)    **The Fraudulent Gray Trust Indication of Interest**

122.    Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," Defendant El-Batrawi informed Defendant WestPark that he received an indication of interest for $1.2 Million ($1,200,000.00) Dollars (U.S.) from the Gray Mars Venus Trust (the "Trust"), which funds were necessary to place all shares and thus close the

Offering in accordance with the Prospectus and the Registration Statement.

123.    Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," such Trust and investor never provided a genuine indication of interest and never intended to purchase $1.2 Million ($1,200,000.00) Dollars (U.S.) of YAYO's shares in the Initial Public Offering, nor intended to honor the "indication of interest."

124.    Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the Entity Defendants, El-Batrawi, Rappaport and Eide knew, or should have known, that such "indication of interest" by the Trust and/or investor in the YAYO Offering was not *bona fide* in that the Trust did not intend to purchase and pay for the shares.

125.    Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the Entity Defendants, El-Batrawi, Rappaport and Eide knew or should have known that receiving such an "indication of interest" of $1.2 Million ($1,200,000.00) Dollars (U.S.) from the Trust via Mr. El-Batrawi in the YAYO Offering was in violation of NASDAQ requirements.

126.    Upon information and belief, the Underwriter Defendants never communicated with the Trust or its beneficial owner in order to ascertain whether the "indication of interest" of $1.2 Million ($1,200,000.00) Dollars (U.S.) in the Offering was real and legitimate and whether the Trust intended to purchase $1.2 Million ($1,200,000.00) Dollars (U.S.) of shares in the Offering.

127.    Upon information and belief, the Underwriter Defendants never conducted any and/or sufficient due diligence and/or other inquiry or investigation in order to ascertain as to whether such Trust and/or investor was providing an actual good faith "indication of interest" that

it would purchase $1.2 Million ($1,200,000.00) Dollars (U.S.) of shares in the Offering.

128.    Upon information and belief, the Underwriter Control Persons never conducted any and/or sufficient due diligence and/or other inquiry or investigation in order to ascertain as to whether such Trust and/or investor was providing an actual good faith "indication of interest" of $1.2 Million ($1,200,000.00) Dollars (U.S.) in the Offering.

129.    Upon information and belief, the Underwriter Defendants and the Underwriter Control Persons knew, or should have known, that the Trust and its beneficial owner did not intend to invest $1.2 Million ($1,200,000.00) Dollars (U.S.) in the YAYO Offering.

**4)      Enticement to YAYO's Creditors**

130.    Upon information and belief and despite the alleged "Indication of Interest" of the Trust, in or about October or November 2019, the Defendants continued to have material difficulties in placing the YAYO Offering and, in along with the Company and Mr. El-Batrawi, solicited major creditors and/or shareholders to invest additional money in YAYO securities in order to close the Offering.

131.    Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the Entity Defendants, El-Batrawi, Rappaport and Eide sought to sweeten the attraction of such further investment to major creditors and/or shareholders by agreeing that, if the existing creditors and/or shareholders provided further funding to "close" the Offering, the Company would "immediately" pay back such sums to the creditors and/or shareholders from the proceeds of the Offering.

132.    Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the promise by the Entity Defendants, El-Batrawi, Rappaport and Eide to repay major creditors and/or shareholders from the proceeds of the Offering

was in direct contravention of the representations in the Registration Statement, the Prospectus and other offering materials as to, among other things, how the Company would use the proceeds from the Offering and the Company's subsequent public announcement that the Offering successfully had "closed."

133.    Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the promise by the Entity Defendants, El-Batrawi, Rappaport and Eide to repay major shareholders from the Offering caused the Registration Statement, the Prospectus and other offering materials to materially misrepresent the Offering and materially mislead investors, including but not limited to the Plaintiff, to its detriment, including as to how the Company would use the proceeds from the Offering and the Company's subsequent public announcement that the Offering successfully had "closed."

134.    Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the promise by the Entity Defendants, El-Batrawi, Rappaport and Eide to repay major creditors and/or shareholders from the Offering was a material omission, with a duty to disclose the same, to the Form S-1/A, the Prospectus and other offering materials as to the Offering and materially misled investors, including but not limited to the Plaintiff, to its detriment, including as to how the Company would use the proceeds from the Offering and the Company's subsequent public announcement that the Offering successfully had "closed."

135.    Upon information and belief and in or about the time of the Plaintiff's Indication and before the Offering was "closed," the promise by the Entity Defendants, El-Batrawi, Rappaport and Eide to repay major shareholders from the Offering was in violation of Sections 11 and 12(a) of the Securities Act, 15 U.S.C. §§ 77k & 77l(a), Section 10(b) of the Exchange Act, 15

U.S.C. §78j(b), and Rule 10b-5, as promulgated thereunder, 17 C.F.R. § 240.10b-5, and the Form S-1/A, the Prospectus and other offering materials materially misrepresented the Company's Offering and materially misled investors, including but not limited to the Plaintiff, to its detriment, including as to how the Company would use the proceeds from the Offering and the Company's subsequent public announcement that the Offering successfully had "closed."

     **5)**        **Post-Closing Implications of the Fraudulent Gray Trust Indication**

136.    As previously alleged herein, on or about November 15, 2019, YAYO announced that it had "closed" the Initial Public Offering.  *See* Press Release/Form 8-K (**Exhibit D**), at p. 6. Through its announcement, the Entity Defendants, El-Batrawi, Rappaport and Eide thereby communicated to public investors, including the Plaintiff, that the Company had successfully sold all 2,625,000 shares as intended in the Offering.

137.    Upon information and belief, in or about November 2019, the Entity Defendants, El-Batrawi, Rappaport and Eide knew, or should have known, that the Offering was falsely "closed" because the Gray Mars Venus Trust had not agreed to purchase the $1.2 million of shares in its purported indication of interest.

138.    Upon information and belief, after the closing of the Company's Offering, the beneficial owner of the Trust informed the Underwriters and/or the Underwriter Control Persons that he did not authorize such an "indication of interest" in the YAYO Offering, and refused to pay the $1.2 Million ($1,200,000.00) Dollars (U.S.) supposedly authorized by him. Thus, by the Trust's refusal to honor the $1.2 Million ($1,200,000.00) Dollars (U.S.) "indication of interest" in YAYO securities, the Company, Mr. El-Batrawi, the Underwriters and the Underwriter Control Persons failed to close the Offering in accordance with their representations and filings, and in accordance with the Prospectus, the Form S-1 and NASDAQ requirements, to the detriment of

investors, including but not limited to FirstFire.

139.   Upon information and belief, Form 4 filings with the SEC on December 18, 2019 and January 2, 2020 by the Trust purport to disclose the purchase of 325,000 shares of YAYO stock on November 13, 2019 and the immediate sale of 329,000 shares of YAYO stock between seven and thirty-three days following the Company's announcement that the offering purportedly had "closed."  The per share price for YAYO stock declined materially over the course of the rapid sale of these shares.

140.   Upon information and belief, the Trust did not in fact pay the proceeds for the 325,000 shares and did not absorb the losses associated with the rapid sale of the 329,000 shares of YAYO common stock.  Rather, upon information and belief, the Company and/or WestPark covered the amounts involved in order to misrepresent to the public that the Offering had successfully closed.

141.   Upon information and belief, the Entity Defendants, El-Batrawi, Rappaport and Eide sold the YAYO securities and/or, upon information and belief, manipulated the market in YAYO securities by exercising "dominion and control" over the securities market for YAYO shares, which had allegedly been the subject of the Trust's $1.2 Million ($1,200,000.00) Dollars (U.S.) "indication of interest" into the open market, and thereby caused a significant decline in the price of the Company's freely tradeable shares of common stock, to the detriment of the Plaintiff.

142.   Upon information and belief, by such sale of YAYO securities, the Entity Defendants, El-Batrawi, Rappaport and Eide materially and negatively affected the positions of investors in YAYO securities, including but not limited to FirstFire, to its detriment.

143.   Upon information and belief, such schemes were in direct contravention of the Registration Statement and the Prospectus, and the Entity Defendants, El-Batrawi, Rappaport and

Eide knew, or should have known, that the Offering and the Prospectus contained untrue statements of material facts, upon which a reasonable investor, including FirstFire, would, and did, rely upon in making its investment decisions.

144.    Upon information and belief, after the "closing" of the Company's Offering and in direct contravention of the representations made by the Company, and the Underwriter Defendants, by the Prospectus and the Registration Statement, as relied upon by FirstFire and other investors, YAYO used the Proceeds of the Offering to cover the purported purchase by the Gray Mars Venus Trust and to repay such loans of the Company's creditors and/or shareholders which had agreed to make additional investments in the YAYO Offering.

145.    Upon information and belief and after the "closing" of the Company's Offering, the Entity Defendants, El-Batrawi, Rappaport and Eide knew, or should have known, that the Company never intended to use funds raised from the IPO for the purchase of vehicles or to increase production and revenues, as provided by the Prospectus, the Form S-1/A and/or otherwise to investors, including but not limited to FirstFire, to its detriment, and yet the Defendants represented, or caused the Company to represent, to investors that YAYO had successfully sold all shares as intended and would use the Offering proceeds to invest in rental vehicles for the business.

146.    Moreover, upon information and belief, Defendant WestPark's underwriting fees exceeded the total of the subscription monies that it raised in the Offering. Total gross proceeds from the Offering were $10,500,000, before deducting underwriting discounts and commissions and other offering expenses.

147.    In or about November 2019 and December 2019 and upon information and belief, the price of the Company's shares exceeded, at certain times, $3.97 / share and millions of shares

were traded by investors.

148.    Since the announcement that YAYO was delisting from NASDAQ, the stock price has plummeted, causing substantial losses to investors, including but not limited to FirstFire, as to sums invested a mere few months previously.

149.    Between in or about February 2020 and June 2020, the price of YAYO shares has declined to as low as approximately 6.9¢ / share, while experiencing significant volume and price volatility during its recent trading activity.

150.    The Entity Defendants, El-Batrawi, Rappaport and Eide made misrepresentations of material facts and omissions of material facts with a duty to disclose so as not to be misleading to the Plaintiff, FirstFire Global Opportunities Fund, LLC, by and through the delivery of the Prospectus to the Plaintiff, or otherwise employed a manipulative or deceptive device or contrivance, and in connection with the offer, purchase and/or sale of YAYO securities, including but not limited to: a) the material omission of Mr. El-Batrawi's continued authority and control over the Company, in violation of NASDAQ requirements; b) the false and fraudulent "Use of Proceeds," as detailed in the Form S-1/A, the Prospectus and in the Offering Documents; c) the false and fraudulent assertion of an "indication of interest" by the Gray Mars Venus Trust; d) the false and fraudulent announcement that the Offering had successfully "closed;" and e) other misrepresentations and omissions to state material facts, with a duty to disclose the same to the Plaintiff, which material facts a reasonable investor, such as FirstFire, required and used, and/or would have required and used in making its investment decision.

151.    The Entity Defendants, El-Batrawi, Rappaport and Eide made misrepresentations of material facts and omissions of material facts with a duty to disclose so as not to be misleading to the Plaintiff, FirstFire Global Opportunities Fund, LLC, by and through the delivery of the

Prospectus to the Plaintiff, or otherwise employed a manipulative or deceptive device or contrivance, and knew, and/or should have known, and failed to conduct appropriate, necessary and sufficient due diligence, inquiries and/or investigations as to: a) the material omission of Mr. El-Batrawi's continued authority and control over the Company, in violation of NASDAQ requirements; b) the false and fraudulent "Use of Proceeds, as detailed in the Registration Statement, the Prospectus and in the Offering Documents; c) the false and fraudulent "indication of interest" by the Trust; d) the false and fraudulent announcement that the Offering had successfully "closed"; and e) other misrepresentations and omissions to state material facts, with a duty to disclose the same to the Plaintiff, which material facts a reasonable investor, such as FirstFire, used and/or would have used in making its investment decision.

152.    Upon information and belief, the Entity Defendants, El-Batrawi, Rappaport and Eide knew that the Gray Mars Venus Trust did not intend to purchase shares in the Offering and knew that the Entity Defendants, El-Batrawi, Rappaport and Eide, had promised that the Company would repay major creditors and shareholders for their purchase of YAYO shares in the Offering through use of the Offering proceeds.  Upon information and belief, such conscious misbehavior or recklessness caused investors, including the Plaintiff, to be deceived as to the extent of investor interest in YAYO's stock and YAYO's ability to use the IPO proceeds to invest in its business.

153.    Further, upon information and belief, the Company and Mr. El-Batrawi had a motive to represent that the Offering had successfully closed in order to both receive the substantial proceeds from the offering and to sell additional shares into the market after the close, including the shares purported to have been purchased by the Trust.  Upon information and belief, the Company had an opportunity to facilitate a fraud on the investing public by its announcement that the Offering had successfully closed.  Upon information and belief, Mr. El-Batrawi exercised

material control over the Company such that he had an opportunity to facilitate a fraud on the investing public by driving its announcement that the Offering had successfully closed.

154.    Upon information and belief, the Underwriter Defendants and the Underwriter Control Defendants each had a motive to represent that the Offering had successfully closed in order to both receive their substantial underwriting fee and to sell additional shares into the market after the close, including the shares purported to have been purchased by the Trust.   Upon information and belief, the Underwriter Defendants also had an opportunity to facilitate a fraud on the investing public by advising on and not correcting the Company's representation that the Offering had successfully closed.

155.    The Entity Defendants, El-Batrawi, Rappaport and Eide have violated the federal securities laws and have perpetrated a fraud and deceit upon the Plaintiff, FirstFire Global Opportunities Fund, LLC, which suffered the loss of over One Million ($1,000,000.00) Dollars (U.S.) as a consequence. Throughout, the Entity Defendants, El-Batrawi, Rappaport and Eide have been unjustly enriched, causing the Plaintiff to suffer further damages and injuries. As a result of the fraudulent scheme, actions, concealment, and omissions of the Entity Defendants, El-Batrawi, Rappaport and Eide, the Plaintiff has incurred substantial damages and lost opportunity in such assets.

156.    On or about April 13, 2020, the Company filed a Form 8-K, as of April 2, 2020, which indicated that the Company had provided a "secured position" on "all assets" of YAYO and its subsidiaries to X, LLC, an entity owned and/or controlled by Mr. El-Batrawi, for a loan of a mere $150,000.00, which debt is due and payable in thirty (30) days thereafter, and demonstrating the virtually complete dissipation of the Proceeds of the Offering by the Company, including but not limited to the Plaintiff's investment of over $1.0 Million ($1,000,000.00) Dollars (U.S.).  *See*

Yayo, Inc.'s Form 8-K, dated April 13, 2020, as attached, restated and incorporated by reference herein as **Exhibit H**, at p. 4.

157.   The Company's April 13, 2020 Form 8-K stated, in pertinent part, as follows:

On April 2, 2020, X, LLC, a company wholly-owned and controlled by Ramy El-Batrawi, the Chief Executive Officer and a Director of YayYo, Inc. (the "Company"), loaned $50,000 to the Company, and on April 6, 2020, X, LLC, loaned an additional $100,000 to the Company. These loans were made under an oral agreement, are secured by all of the assets of the Company and its subsidiaries, bear no interest, and are payable 30 days after the date of the loan. The Company will use the proceeds of these loans for general working capital purposes.

*Id.* (**Exhibit H**) at p. 4.

158.   Also in the YAYO April 13th Form 8-K, the Company stated, in pertinent part, as follows:

On April 3, 2020, the Company issued and sold 1,428,571 of its common stock, par value $0.000001 per share, to a private investor who is an "accredited investor" as defined in Rule 501 under the Securities Act of 1933, as amended (the "Securities Act"), for a purchase price of $0.07 per share, for gross proceeds of $100,000. The Company will use the proceeds of this sale for general working capital purposes.

*See id.* (**Exhibit H**) at p. 4.

159.   Upon information and belief, by providing a first secured position on all of the assets of the Company and its subsidiaries to X, LLC, Mr. El-Batrawi has almost unfettered control and authority over YAYO, for a mere $150,000.00, and all the unsecured creditors and shareholders, including FirstFire and other investors, are at substantial risk for the loss of their entire investment.

160.   Plaintiff FirstFire alleges that the Entity Defendants, El-Batrawi, Rappaport and Eide have committed securities fraud, unfair and deceptive trade practices, and have perpetrated a fraud and deceit upon FirstFire, which suffered the loss of over One Million ($1,000,000.00) Dollars (U.S.) as a consequence. Throughout, the Defendants have been unjustly enriched and, in

effect, misappropriated and converted FirstFire's assets, causing it to suffer further damages and injuries. As a result of the fraudulent scheme, actions, concealment, and omissions of the Entity Defendants, El-Batrawi, Rappaport and Eide, the Fund has incurred substantial damages and lost opportunity in such assets.

161.    During the relevant time period and as set forth herein, the Defendants, jointly and severally, singly and in concert, directly and/or indirectly, published and disseminated false, deceptive and untrue statements of material facts to the Plaintiff in connection with the offer, purchase and/or sale of YAYO securities. Defendants' false and misleading statements and omissions were intended to and did, as alleged herein, (i) deceive the investing public, including Plaintiff and (ii) artificially create, inflate, and maintain the market for and market price of the Company's securities.

162.    During the relevant time period and as set forth herein, the Defendants omitted material facts, with a duty to disclose such material facts, which a reasonable investor would require in order to make its investment decision, and in order to mislead the Plaintiff in connection with the offer, purchase and/or sale of YAYO securities. Defendants were individually and collectively responsible for making the statements and omissions alleged herein, by virtue of having prepared, approved, signed, and/or disseminated documents which contained untrue statements of material fact and/or omitted facts necessary to make the statements therein not misleading.

163.    During the relevant time period and as set forth herein, the Defendants delivered the Prospectus and/or other Registration Documents in connection with the distribution of YAYO securities in the Initial Public Offering. Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or acted with reckless disregard for the truth in that

they failed to ascertain and disclose such facts, even though such facts were readily available to them.

164.    During the relevant time period and as set forth herein, the Defendants delivered the Prospectus and/or other Registration Documents to the Plaintiff, upon which it relied, to its detriment. Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations, and future prospects of the Company as specified herein.

165.    During the relevant time period and as set forth herein, the Defendants' purpose and effect of the scheme, plan, and unlawful course of conduct was, *inter alia,* to induce Plaintiff and others to purchase securities. In ignorance of the false and misleading nature of the Company's statements and omissions, and relying directly or indirectly on those statements and/or upon the integrity of the market price for YAYO securities, Plaintiff purchased YAYO securities at artificially inflated prices. But for the fraud, they would not have purchased the securities at artificially inflated prices.

166.    As a direct and proximate cause of the Defendants' violations of Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

### COUNT VII – "CONTROL PERSON" LIABILITY
### (as to Defendants Aegis, El-Batrawi, Rappaport, and Eide)

167.    The Plaintiff reasserts Paragraphs 1 through 166 of the Second Amended Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

168.    During the relevant time period and as set forth herein, the Defendants are, and were during the relevant time, "control persons" within the meaning of Section 20(a) of the Exchange Act.

169.    As alleged in detail herein, YAYO, WestPark, and Aegis violated Section 10(b) of the Exchange Act and Rule 10b-5 by soliciting purchases of YAYO common stock in the IPO from public investors, including the Plaintiff by means of the Prospectus, which included untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.  The Entity Defendants failed to exercise reasonable care regarding the accuracy and completeness of the Registration Statement and the Prospectus.  The facts misstated or omitted would have been material to a reasonable person reviewing the Registration Statement and Prospectus.

170.    Defendants El-Batrawi, Rappaport, and Eide had a duty to disseminate accurate and truthful information with respect to YAYO and its management and operations.

171.    As alleged above, El-Batrawi at all relevant times either (i) participated in the operation and management of the Company, and/or (ii) conducted and participated, directly and/or indirectly, in the conduct of YAYO's business affairs, and/or (iii) exerted controlling influence over the Company through the extent of his ownership of YAYO and the nature of his relationships with YAYO's employees and directors. Because of his position of control and authority over YAYO, Mr. El-Batrawi was able to, and did, control the contents of the IPO Prospectus.

172.    As alleged above, Defendant Rappaport at all relevant times either (i) participated in the operation and management of WestPark, and/or (ii) conducted and participated, directly and/or indirectly, in the conduct of WestPark's business affairs generally, and the YAYO initial public offering specifically, and/or (iii) exerted controlling influence over WestPark through his

ownership of WestPark and the nature of his relationships with WestPark's officers and employees. Because of his position of control and authority over WestPark, an underwriter of the YAYO Initial Public Offering, Mr. Rappaport was able to, and did, control the contents of the IPO Prospectus.

173.    As alleged above, Defendant Eide at all relevant times either (i) participated in the operation and management of Aegis, and/or (ii) conducted and participated, directly and/or indirectly, in the conduct of Aegis's business affairs generally, and the YAYO initial public offering specifically, and/or (iii) exerted controlling influence over Aegis through his controlling ownership of Aegis and/or the nature of his relationships with Aegis's officers and employees. Because of his position of control and authority over Aegis, an underwriter of the YAYO IPO, Mr. Eide was able to, and did, control the contents of the IPO Prospectus.  Further, the Defendant Aegis, as lead underwriter for the Offering, exercised control and authority over WestPark as a secondary underwriter on the Offering.

174.    The Plaintiff purchased YAYO common stock securities issued in the November 2019 IPO and was damaged thereby. The November 2019 IPO was conducted pursuant to the Registration Statement and Prospectus.

175.    Pursuant to Section 20(a) of the Exchange Act, Defendants Aegis, El-Batrawi, Rappaport, and Eide are jointly and severally liable with and to the same extent as the Entity Defendants for those entities' violations of Section 10(b) of the Exchange Act.

176.     In addition to their direct liability, Defendants Aegis, El-Batrawi, Rappaport, and Eide (the "Section 20(a) Defendants") are liable to the Plaintiff for the conduct of such individual(s), as described herein, in that:

a)      at all times material hereto, the Section 20(a) Defendants controlled certain individual(s), in their employ and/or subject to their authority, supervision and/or control, respectively, directly or indirectly;

b)      at all times material hereto and with respect to all of the transactions and misrepresentations described herein, such individual(s), in their employ and/or subject to their authority, supervision and/or control, respectively, and/or as officers, employees and/or agents of the Defendants;

c)      at all times material hereto, the Section 20(a) Defendants failed to have policies, practices and/or procedures in effect, which were adequate, sufficient, necessary and/or appropriate in order to monitor and supervise the actions of such individual(s), as described herein, and adequate, sufficient, necessary and/or appropriate to prevent said actions from occurring and continuing to occur; and

d)      at all times material hereto, the Section 20(a) Defendants, with respect to the Plaintiff's investment in YAYO in the Initial Public Offering, failed to properly or sufficiently implement, execute and/or utilize the policies, practices and/or procedures which they had in effect and which purportedly were intended and designed to monitor and supervise the actions of such individual(s), described herein and to prevent said actions from occurring and continuing to occur.

177.    The Section 20(a) Defendants, jointly and severally, singly and in concert, directly and/or indirectly, benefitted from fees, profits, gains, interest, commissions and/or other monies, as derived from the conduct of such individual(s), as described herein. As detailed herein, the Section 20(a) Defendants were controlling persons of YAYO, WestPark, and/or Aegis due to their executive positions with the Entity Defendants, their direct involvement in the day-to-day business

and operations of the Entity Defendants, their role as lead underwriter in the Offering (as to Aegis and Eide), and their participation in the preparation and dissemination of the inaccurate Offering Documents. Each of these Section 20(a) Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of YAYO, WestPark, and/or Aegis, including the content and dissemination of the YAYO financial statements and the Offering Documents.

178.   As "control persons," the Section 20(a) Defendants are liable for the false and misleading actions, practices, courses of conduct and/or omissions of those controlled persons committing deception in connection with the offer, purchase and/or sale of YAYO securities, at the time of the wrongs alleged herein and as set forth herein, within the meaning of Section 20(a) of the Exchange Act, as the Section 20(a) Defendants had the supervision, power, authority, and influence over such controlled persons, and exercised the same as described herein.

179.   The Section 20(a) Defendants' control, authority, supervision and/or positions made them privy to and provided them with knowledge, actual and/or apparent, as to the material misrepresentations and the omissions of material facts, with a duty to disclose, as to the Plaintiff. The purpose and effect of said false and misleading statements was, among other things, to induce Plaintiff to invest in YAYO.

180.   As a direct and proximate cause of the "control person" liability of the Section 20(a) Defendants, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants. Pursuant to Section 20(a) of the Exchange Act, the Section 20(a) Defendants are jointly and severally liable for the Entity Defendants' violations of Sections 10(b) of the Exchange

Act and Rule 10b-5.

## COUNT VIII - FRAUD AND DECEIT
### (as to All Defendants)

181.    The Plaintiff reasserts Paragraphs 1 through 180 of the Second Amended Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

182.    The actions of the Defendants described herein constitute fraud and deceit, including but not limited to the following:

(a)    the Defendants made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know of their falsity;

(b)    the Defendants made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and

(c)    the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

183.    As a direct and proximate cause of the Defendants' fraud and deceit, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT IX - BREACH OF CONTRACT
### (as to Defendant WestPark Only)

184.    The Plaintiff reasserts Paragraphs 1 through 183 of the Second Amended Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

185.    The Plaintiff entered into a contract with Defendant WestPark, in order to invest in the Company, in good faith and for its investment objectives.

186.     By its contract with WestPark, the Plaintiff sought to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the securities industry.

187.     A breach of contract is failure without excuse to perform a duty which is due under the contract.

188.     Defendant WestPark, by and through its conduct, entered into a contract to distribute, offer and/or sell YAYO securities, in the Offering, to the Plaintiff.

189.     The contract between the Plaintiff and Defendant WestPark, required, implicitly and/or expressly, that the Defendant comply with securities industry standards, practices and courses of conduct, and under the federal and state securities laws and the rules and regulations of the SROs, including but not limited to NASDAQ and FINRA.

190.     During the relevant time period and as set forth herein, the Plaintiff performed all conditions, covenants and promises required of it, under the contract with WestPark.

191.     During the relevant time period and as set forth herein, Defendant WestPark failed to perform, and breached, the conditions, covenants and promises required of it, under the contract with FirstFire.

192.     During the relevant time period and as set forth herein, Defendant WestPark is liable for a breach of contract.

193.     As a direct and proximate cause of the Defendant's breaches of its contract, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

### COUNT X - BREACH OF IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING
### (as to Defendant WestPark)

194.    The Plaintiff reasserts Paragraphs 1 through 193 of the Second Amended Complaint, together with **Exhibits,** and restates and incorporates them herein by reference.

195.    It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contact shall take any action to harm another party's rights under the contract.

196.    The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement of faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

197.    A breach of contract is the failure to perform for which a legal excuse is lacking.

198.    As a matter of law, a contract existed and Defendant WestPark breached and failed to comply with the covenant of good faith and fair dealing.

199.    During the relevant time period and as set forth herein, the law is clear - the Plaintiff had a binding contract and the Defendant WestPark has no legal basis, as a matter of law, to avoid its obligations under the contract.

200.    Defendant WestPark had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contracts and statements made to the Plaintiff to induce it to enter into the contract and provide assets to the Defendant in exchange for its promise to repay the same, with interest.

201.    As set forth herein, the Defendant WestPark breached the implied covenant of good faith and fair dealing with the Plaintiff.

202.    As a direct and proximate cause of the Defendant's breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT XI – UNJUST ENRICHMENT
### (as to Defendants WestPark and Aegis)

203.    The Plaintiff reasserts Paragraphs 1 through 202 of the Second Amended Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

204.    The Defendants illegally received assets and benefits from the Plaintiff, as arising from their false and misleading statements and misrepresentations, and omissions to state material facts, with a duty to disclose the same, and without providing equivalent value therefor.

205.    The Defendants' actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

206.    The Defendants have been unjustly enriched by their actions, as described herein.

207.    As a direct and proximate cause of the Defendants' unjust enrichment, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

## COUNT XII – CIVIL CONSPIRACY
### (as to All Defendants)

208.    The Plaintiff reasserts Paragraphs 1 through 207 of the Second Amended Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

209.    The Defendants' actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted, in concert and in a civil conspiracy, against the Plaintiff.

210.    The Defendants, together with others, combined, conspired, acted in concert, and/or engaged in a conspiracy by entering into an agreement with unlawful motives and/or means, and undertook overt acts towards the ends of such conspiracy.

211.    In order to attain of the outcome of their conspiracy, the Defendants required coordination and actions to be taken in unison and/or in concert, together with joint tortious activity of the other co-conspirators.

212.    The Defendants had the particular power and/or authority in their business and business relationships to force, coerce, and/or encourage others to participate in this conspiracy and result in the Offering, in the unlawful delivery of the Prospectus, and in the offer, purchase and/or sale of the YAYO securities to the Plaintiff.

213.    The Defendants furthered the conspiracy by lending aid and encouragement to the others and ratifying and adopting the acts of its co-conspirators.

214.    As a direct and proximate cause of the Defendants' civil conspiracy, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendants.

# VI. <u>REQUESTS FOR RELIEF</u>

WHEREFORE, the Plaintiff, FirstFire Global Opportunities Fund, LLC, respectfully requests that this Honorable Court grant it the following relief:

A)      Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B)      Determine that the Defendants are liable for all damages, losses, and costs, as alleged herein;

C)      Determine and award the Plaintiff, FirstFire Global Opportunities Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendants, as set forth herein;

D)      Render a judgment and decision on behalf of the Plaintiff, FirstFire Global Opportunities Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendants are liable, in all respects;

E)      Order, decide, adjudge, and determine that the liability of the Defendants, is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)      Grant the Plaintiff, FirstFire Global Opportunities Fund, LLC, rescission of its purchase of YAYO shares in the Offering to the extent it still owns the shares;

G)      Award the Plaintiff, FirstFire Global Opportunities Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

H)      Award the Plaintiff,  FirstFire Global Opportunities Fund, LLC, its actual attorneys' fees, for being required to prosecute this action;

I)       Award the Plaintiff, FirstFire Global Opportunities Fund, LLC, multiple, double, treble, and/or punitive damages in an amount to be determined;

J)       Enter judgment on behalf of the Plaintiff, FirstFire Global Opportunities Fund, LLC, on the Complaint;

K)      Order declaratory relief, as appropriate and as this Honorable Court deems necessary; and/or

L)       Any additional relief which this Honorable Court deems just and proper.

**THE PLAINTIFF, FIRSTFIRE GLOBAL OPPORTUNITIES FUND, LLC, DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE**

Dated: December 3, 2020            Respectfully Submitted,
                                   PLAINTIFF, FirstFire Global Opportunities Fund, LLC,

                                   By its Attorneys,


                                   */s/ Philip M. Giordano*
                                   Philip M. Giordano, Esq.
                                   Thomas A. Bockhorst, Esq. (*pro hac vice* to be filed)
                                   Sophia E. Kyziridis, Esq. (*pro hac vice* to be filed)
                                   Giordano & Company, P.C.
                                   REED & GIORDANO, P.A.
                                   47 Winter Street, Suite 800
                                   Boston, Massachusetts 02108-4774
                                   Telephone: (617) 723-7755
                                   Facsimile: (617) 723-7756
                                   Email: pgiordano@reedgiordano.com
                                   Email: tbockhorst@reedgiordano.com
                                   Email: skyziridis@reedgiordano.com

## <u>CERTIFICATE OF SERVICE</u>

I, Philip M. Giordano, do hereby certify that on the 3rd day of December, 2020, I caused to be served a true and correct copy of Plaintiff's Second Amended Complaint, with <u>Exhibits</u>, as filed by and through the District Court's electronic filing/ECF system and that such true copy is available for downloading and viewing by all counsel of record, and by emailing a true copy of the same to counsel for Defendants WestPark and Rappaport, having entered an appearance in the instant action.

Dated: December 3, 2020                    */s/ Philip M. Giordano*
                                           Philip M. Giordano